Thomas Darrell CAMP, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 25528.

United States Court of Appeals
Fifth Circuit.

June 26, 1969.

See also D.C., 285 F.Supp. 400.

Morris Brown, Atlanta, Ga., for appellant.

Charles B. Lewis, Jr., Asst. U. S. Atty., Charles L. Goodson, U. S. Atty., Atlanta, Ga., for appellee.

Before JOHN R. BROWN, Chief Judge, TUTTLE,* Circuit Judge and FISHER, District Judge.

JOHN R. BROWN, Chief Judge:

Appellant Camp, a Jehovah's Witness, was convicted of violating 50 U.S.C.A. App. § 462 for failure to report for civilian employment in lieu of military service. In the present appeal he vigorously assails that conviction on several grounds. We find all his contentions to be without merit and affirm.

* Judge Tuttle did not participate in this decision or opinion.

First, Camp asserts that his challenges to the Grand Jury and the array of petit jurors should have been sustained on the ground that jury box list from which these bodies were chosen did not constitute a representative cross-section of the community. The basis for this contention is the claim that a cognizable group of qualified citizens—Camp's coreligionists—has been systematically excluded from the jury list.

Formerly the "key man" system of selecting jurors was used in the Northern District of Georgia. In December 1966, however, following Rabinowitz v. United States, 5 Cir., 1966, 366 F.2d 34 (en banc) and anticipating the Jury Selection and Service Act of 1968, a new system of jury selection was instituted whereby the jurors were selected at random from voter registration lists. Camp asserts that because of their religious beliefs, his fellow Jehovah's Witnesses do not register to vote. Accordingly, he claims that the use of voter registration lists for jury selection results in the exclusion of all Jehovah's Witnesses from juries—both grand and petit.

The general principles governing claims of discrimination in the composition of juries have been recently set forth in Judge Ainsworth's excellent opinion for this Court in Simmons v. United States, 5 Cir., 1969, 406 F.2d 456. The Court there rejected the attack—based on the alleged exclusion of Negroes from juries—on the selection system of the very same District involved here. Although *Simmons* does not foreclose examination of the question of exclusion of a religious group,[1] the *Simmons* opinion reflects the general approval of the process of random selection of jurors from voter registration lists. See Simmons v. United States, supra, at 461–463.

Of course, under the Jury Selection and Service Act of 1968, 28 U.S.C.A. §§ 1861–69, Congress now requires the use of voter registration lists under jury plans which are to be (and have been) approved by the Judicial Council and the Chief District Judge of the District. Plans, if approved, may require supplemental sources if needed to assure a fair cross-section of the community. But the principal, if not sole, source is to be voter registration lists for random selection. Use of such lists as the sole source of names for jury duty is constitutionally permissible unless this system results in the systematic exclusion of a "cognizable group or class of qualified citizens." Grimes v. United States, 5 Cir., 1968, 391 F.2d 709, cert. denied, 393 U.S. 825, 89 S.Ct. 87, 21 L.Ed.2d 96; Rabinowitz v. United States, 5 Cir., 1966, 366 F.2d 34. This Court and others have held that those who do not choose to register to vote cannot be considered a "cognizable group." Grimes v. United States, *supra*; United States v. Caci, 2 Cir., 1968, 401 F.2d 664, 671; United States v. Kelly, 2 Cir., 1965, 349 F.2d 720, 778, cert. denied, 384 U.S. 947, 86 S.Ct. 1467, 16 L.Ed.2d 544; Gorin v. United States, 1 Cir., 1963, 313 F.2d 641, 644, cert. denied, 374 U.S. 829, 83 S.Ct. 1870, 10 L.Ed.2d 1052. The fact that some persons may from religious conscience or otherwise choose not to register to vote does not, in our view, convert that subclass of nonvoters into a "cognizable group." [2]

Camp's contention that he should have been advised that he had the right to counsel at the time he was classified by the Local Board is also unavailing. This Court, like others, holds

---

1. Cf. Tillman v. United States, 5 Cir., 1969, 406 F.2d 930, 940.

2. The Jehovah's Witnesses are not exempted from jury duty by statute. 28 U.S.C.A. § 1866. But there is no assurance from this record or elsewhere that if the names of all adult Jehovah's Witnesses were added to the master jury box source, the same religious tenets that compel these people to decline participation in the electoral process of government would not lead them to attempt to refuse participation in the judicial process as jurors.

that there is no Sixth Amendment right to counsel in the non-criminal administrative proceedings before the Selective Service Board. United States v. Willis, 5 Cir., 1969, 409 F.2d 830; Fleming v. United States, 5 Cir., 1969, 406 F.2d 1247; Chaney v. United States, 5 Cir., 1969, 406 F.2d 809; McCoy v. United States, 5 Cir., 1968, 403 F.2d 896; Merritt v. United States, 5 Cir., 1968, 401 F.2d 768. Likewise, because the Selective Service proceedings are not stages in a criminal prosecution, the decision in Miranda v. Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, concerning custodial interrogation, is not applicable.

■ ▬▬ Next, Camp contends that there was "no basis in fact" for the denial, by the Local Board and the Appeal Board, of his claim to a ministerial exemption.[3] For a statement of controlling principles we cannot improve on what Judge Ainsworth recently wrote for this Court in McCoy v. United States, *supra*:

"The scope of review in draft cases is very limited and the range of review is the narrowest known to the law. * * * The courts do not sit as super draft boards, substituting their judgments on the weight of the evidence, nor should they look for substantial evidence to support such determinations. * * *

* * * * * *

The registrant bears the burden of clearly establishing his right to the ministerial exemption and the board has no affirmative duty to ascertain whether or not the registrant qualifies for the exemption. * * *

The Act provides that regular or duly ordained ministers of religion shall be exempt from service. 50 U.S.C. App. § 456(g). See also Selective Service Regulations, 32 C.F.R. § 1622.43. There must be regularity of religious activities, a ministerial vocation rather than an avocation, and a recognized standing as a minister to a congregation or leader of a group of lesser members of his faith. * * *

In recent cases we have consistently approved the 'basis in fact' test in connection with classification of draft registrants by local boards."

403 F.2d at 899–900 (citations and footnotes omitted).

▬▬ In this case there was clearly a "basis in fact" for the denial of the ministerial exemption. When Camp first registered for the draft in 1963, he completed a questionnaire, giving his occupation as "presently unemployed." At that time he claimed both a ministerial and conscientious objector classification. A statement submitted in support of his request for a ministerial exemption indicated that he was an active church member, but showed also that he lacked the position in the hierarchy of the congregation that is customarily associated with the status of a minister.[4]

3. We assume, without deciding, that although Camp did not report to the Local Board or civilian employer, he has sufficiently exhausted his administrative remedies to allow him to challenge his classification in defense to this criminal prosecution. See McKart v. United States, 1969, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194; DuVernay v. United States, 5 Cir., 1968, 394 F.2d 979, aff'd by an equally divided Court, 1969, 394 U.S. 309, 89 S.Ct. 1186, 22 L.Ed.2d 306; Campbell v. United States, 5 Cir., 1968, 396 F.2d 1. In Daniels v. United States, 9 Cir., 1967, 372 F.2d 407, the Ninth Circuit held "that a class I-O conscientious objector, who has passed his physical examination, exhausted his board appeal remedies, and been ordered to report to the board for assignment to a civilian employer, may defend a criminal action for failure to so report on the ground that his classification is invalid. Such a person has reached the 'brink' in the selective process without going through the formality of reporting to the board or the civilian employer." 372 F.2d at 414.

4. All the members of Jehovah's Witnesses are considered "ordained ministers," but this does not entitle all to the ministerial classification for draft purposes.

Over one year later, in November 1964, Camp was appointed Ministry School Servant, and in February 1965 he was appointed Book Study Conductor. These offices, however, are not sufficient in themselves to establish, even in the eyes of the sect, the ministerial exemption. Indeed, in 1958 the General counsel of Jehovah's Witnesses stated in a memorandum to the National Selective Service Appeal Board "that the Society would not contend for a [ministerial] classification except for those who qualify as Pioneers and as a Congregation Servant and who are also devoting their time to ministerial work of Jehovah's Witnesses sufficiently to claim that it is their vocation rather than their avocation." McCoy v. United States, *supra*, at 901. It is significant that appellant did not claim Pioneer status, which would have meant that he spent 100 or more hours a month in his religious work. See McCoy v. United States, *supra*. Rather, Camp apparently spent only about fifty hours a month in his ministerial work.[5]

From these briefly summarized facts and others in the record, it is clear that there was an adequate evidentiary foundation for the Board's concluding that Camp lacked the "recognized standing as a minister to a congregation or leader of a group of lesser members of his faith." McCoy v. United States, *supra*, at 900. Accordingly, there was a "basis in fact" upon which the Appeal Board could properly deny him the ministerial classification.[6]

■ Camp argues next that the District Court erred in finding as a matter of law that there was no bias, prejudice, discrimination, or arbitrary or capricious action by the Selective Service Boards. Upon his appeal from the 1-A classification by the Local Board, Camp was accorded a de novo classification hearing by the Appeal Board. The Appeal Board denied him the ministerial exemption, but gave him a conscientious objector classification.[7] Thus, on the claims of prejudice, arbitrary action, and the like, we must focus on the proceedings before the Appeal Board, since a fair de novo consideration of the issue on the appeal cures defects in the procedure on the level of the Local Board. Clay v. United States, 5 Cir., 1968, 397 F.2d 901.[8]

■ We agree with the District Court that Camp has produced no evidence supporting his claim of bias, prejudice, discrimination, and arbitrary action. The related contention that the Trial Court erred in limiting appellant's proof to fraud, misconduct, bias or prejudice fares no better. At Camp's trial defense counsel placed members of the Appeal Board on the stand and attempted to explore their mental processes in making Camp's classification. The Trial Judge properly declined to permit this line of questioning. See Clay v. United States, *supra*, where we stated:

"It would have been grossly improper to place the members of the Presidential Appeal Board and the Texas Appeal Board on the witness stand to determine from them what their reasons were for the selective service classification which they gave to appellant in this case."

397 F.2d at 915.

■ Finally, we consider Camp's contention that the limitation of judicial jurisdiction to the question whether there is a "basis in fact" for a classifi-

---

5. In *McCoy* this Court upheld the denial of a ministerial classification to a man who allegedly spent about seventy-five hours a month in his religious work.

6. There is no merit to Camp's incidental contention that the question of "basis in fact" is for the jury rather than the Court. Kessler v. United States, 5 Cir., 1969, 406 F.2d 151.

7. This classification was in accordance with a recommendation made by the Department of Justice.

8. We do not regard the Supreme Court's action in vacating the judgment, 1969, 394 U.S. 310, 89 S.Ct. 1164, 22 L.Ed. 2d 297, for a remand hearing on electronic eavesdropping as undermining in the least our decision and opinion.

cation is, absent a constitutionally adequate alternative judicial procedure for testing the validity of that classification, an invalid limitation. Obviously, in the form that this contention is advanced, it presupposes that the existing judicial procedure for testing the validity of a classification is constitutionally inadequate. This notion, however, has been rejected by the Supreme Court time and time again and no later than in its very recent decision in Clark v. Gabriel, Dec. 16, 1968, 393 U.S. 256, 89 S. Ct. 424, 21 L.Ed.2d 418, 421. With a faulty premise, Camp's contentions and conclusion must fail.

None of the other contentions warrants more than the statement that each has been considered and found to be without merit.

Affirmed.