UNITED STATES of America

v.

Alexander Marchand LEWIS, a/k/a Alexander Lewis Sidney, Appellant.

No. 72–1547.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Dec. 11, 1972.

Decided Jan. 10, 1973.

H. David Rothman, Pittsburgh, Pa., for appellant.

Richard L. Thornburgh, U. S. Atty., Blair A. Griffith, Pittsburgh, Pa., for appellee.

Before SEITZ, Chief Judge, and ALDISERT and MAX ROSENN, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Chief Judge.

The jury found the defendant guilty, with sufficient evidence, of both counts of armed robbery of a federally insured savings and loan association. The defendant appeals on three grounds.

First, the defendant contends that the district court erred in refusing to suppress the in-court identification testimony as being derived from an improperly conducted lineup. The lineup was not held until March 10, 1972, and the trial began on March 15, 1972. At the lineup the defendant was represented by counsel. The defendant was identified with some qualifications by bank employees. At a pre-trial suppression hearing, the defendant argued that he was conspicious in the lineup in his hair style, clothes, age, weight, and height. Additionally, he maintained that he was prejudiced by the conducting of the lineup a few days before trial. The district court held the lineup had been properly conducted. We hold that these differences between the defendant and the other participants are insufficient to support a holding that the district court erred in its determination to admit the in-court identification testimony. Further, while not necessarily approving the holding of a lineup close to the time of trial, we find no prejudice to the defendant therefrom. The in-court identifications were positive and the bank employees had sufficient opportunity at the time of the robbery to observe the robber.

Secondly, the defendant argues that the district court abused its discre-

tion in refusing the defendant's requests for a continuance. Prior to and throughout the trial, the defendant requested a continuance because of his inability to locate two alleged witnesses who he thought might be able to establish that he was working as a mover in Pittsburgh on the day of the robbery. His counsel represented to the court that the defendant elected to try to reach these alleged witnesses himself from the county jail and did not want his counsel to make these efforts. The district court denied the requests because the defendant was unable to inform the court when, if ever, these alleged witnesses would be found. Since the district court could not delay the trial indefinitely, we hold that the district court did not abuse its discretion in denying the requested continuance.

Lastly, the defendant on numerous grounds challenges the Jury Selection Plan of the Western District of Pennsylvania (Pittsburgh Division) (hereinafter cited as "Plan") pursuant to which Plan the defendant's jury was selected. The Jury Selection and Service Act of 1968 (hereinafter cited as "Act") established that the defendant had the right to be tried by a jury "selected at random from a fair cross section of the community [of the Pittsburgh Division]" (28 U.S.C. § 1861) and from which "[n]o citizen [was] excluded . . . on account of race, color, religion, sex, national origin, or economic status" (28 U.S.C. § 1862). The Act required "[e]ach United States district court [to] devise and place into operation a written plan for random selection of . . . petit jurors that [would] be designed to achieve the [above-mentioned] objectives of sections 1861 and 1862." 28 U. S.C. § 1863(a). Congress determined that the principal source of names for the random selection should be either "the voter registration lists or the lists of actual voters." 28 U.S.C. § 1863(b)(2). The Act also provided: "The plan shall prescribe some other source or sources of names in addition to voter lists *where necessary* to foster the policy and protect the rights secured by sections 1861 and 1862 . . . ." Id. (emphasis added). The sole source of names for the challenged Plan was the voter registration lists, based on the representation in section 5 of the Plan that "[v]oter registration lists represent a fair cross section of the community [in the District]." The Plan was adopted by the Western District and approved by a "reviewing panel" in accordance with 28 U.S.C. § 1863(a).[1]

■■ The defendant had the right to a jury "*selected* at random from a fair cross section of the community." However, he had no right to be tried by a particular jury which was itself "a fair cross section of the community";[2] nor did he have a right to a jury selected at random from the fair*est* cross section of the community. Thus, the defendant must establish that the voter registration lists from which the selection of his jury was made did not represent "a fair cross section of the community." We hold as a matter of law that the defendant has failed to sustain this burden.

(a) The defendant argues that Plan's reliance solely on the voter registration lists rendered the Plan invalid because "some other source or sources of names in addition to voter lists [were] necessary to [provide 'a fair cross section of the community'] and [prevent exclusion 'on account of race']." 28 U.S.C. §

---

1. United States v. Torquato, 308 F.Supp. 288 (W.D.Pa.1969) upheld the Plan's reliance on the voter registration lists, instead of on the census, and found the Plan in conformity with the Act. Smith v. United States, 456 F.2d 121, 122 (3d Cir. 1972).

2. The defendant challenges his particular jury because it consisted only of white persons. This challenge is without merit, unless the Plan and its reliance solely on the voter registration lists failed to produce a fair cross section of the community. "[A] particular . . . petit jury need not 'be a perfect mirror of the community or accurately reflect the proportionate strength of every identifiable group' . . . ." United States v. Zirpolo, 450 F.2d 424, 429 (3d Cir. 1971).

1863(b)(2). He alleges blacks in the Pittsburgh Division do not register to vote. Thus, the voter registration lists failed to provide a fair cross section of the community and their sole use excluded blacks from jury service. The defendant suggests the Social Security rolls, Public Assistance rolls, and census as possible "other sources of names."

■■ In reviewing challenges to an approved plan (28 U.S.C. § 1863(a) ), we "require that prospective jurors be selected 'without systematic and intentional exclusion' of any group." United States v. Zirpolo, 450 F.2d 424, 428 (3d Cir. 1971); Dow v. Carnegie-Illinois Steel Corp., 224 F.2d 414, 423–24 (3d Cir. 1955), cert. denied, 350 U.S. 971, 76 S.Ct. 442, 100 L.Ed. 842 (1956). Similarly, the Fifth Circuit in Camp v. United States, 413 F.2d 419, 421 (5th Cir.), cert. denied, 396 U.S. 968, 90 S.Ct. 451, 24 L.Ed.2d 434 (1969) stated:

> Use of [voter registration] lists as the sole source of names for jury duty is constitutionally permissible *unless this system results in the systematic exclusion of a "cognizable group or class of qualified citizens."* (emphasis added).

Therefore, the defendant must establish that blacks in the Pittsburgh Division choosing not to register to vote were a "cognizable group" which were "systematically excluded."

■ In *Camp* the Fifth Circuit further stated at 421:

> [The Fifth Circuit] and [other courts] have held that those who do

not choose to register to vote cannot be considered a 'cognizable group.' [citations omitted]. The fact that some persons may from religious conscience or otherwise choose not to register to vote does not, in our view, convert that subclass of nonvoters into a "cognizable group."

We likewise hold that a group of persons who choose [3] not to vote do not constitute a "cognizable group." Further, their non-registration is a result of their own inaction; not a result of affirmative conduct by others to bar their registration. Therefore, while a fair*er* cross section of the community may have been produced by the use of "other sources of names," the Plan's sole reliance on voter registration lists was constitutionally permissible.[4]

■ (b) The defendant contends that the Plan failed to produce "a fair cross section of the community" because the voter registration lists in use at the time of his trial did not include the newly enfranchised 18–20 year old voters. Section 9(b)(1) of the Plan and section 1865(b)(1) disqualified any person who was not 21 years old. On June 22, 1970, Congress in the Voting Rights Act Amendments of 1970 gave the right to vote in federal elections to 18–20 year old persons. The defendant was tried on March 15, 1972. It was not until April 6, 1972, that section 1865(b)(1) was amended to include 18–20 year olds in jury service. Pub.L.No.92–269, 86 Stat. 117. Thus, at the time of the defendant's trial, the Plan was in conformity with the Act. Further, the exclusion of

---

3. However, this would not be true if these blacks had been *denied* the opportunity to register to vote.

4. Also without merit is the defendant's contention that, even if the voter registration lists provided a fair cross section of the community, the Plan should have provided for the selection of blacks in a greater proportion than their proportion in the community because the proportion of blacks charged and tried in the Pittsburgh Division to the total number of persons charged and tried exceeded the proportion of blacks on the

voter registration lists to the total number of persons registered.

We further find without merit the defendant's constitutional challenge to section 9(b)(4) of the Plan and section 1865(b)(5) [28 U.S.C.] which barred from jury service any person who "[had] a charge pending against him for the commission of . . . a crime punishable by imprisonment for more than one year. . . ." as being "a denial of civil rights amounting to a bill of attainder, a denial of due process and an unconstitutional departure from the presumption of innocence."

18–20 year olds from jury service from the time of their enfranchisement to the time of the amendment of the Act did not deny the defendant a jury selected from a fair cross section of the community and was not constitutionally impermissible.

■ (c) Additionally, the defendant argues that the Plan failed to produce "a fair cross section of the community" because the voter registration lists in use at the time of his trial were not current. Section 6 of the Plan stated the Plan was using the voter registration lists from "the last election in March of 1968" at the time of the trial in March 1972. While the jury selection plans should strive to use current voter registration lists, we hold the use of the 1968 lists did not deny the defendant a jury selected from a fair cross section of the community and was not constitutionally impermissible.

The judgment of the district court will be affirmed.