UNITED STATES of America,
Appellee,

v.

Kenneth FREEMAN, Jr., Appellant.

No. 74–1794.

United States Court of Appeals,
Eighth Circuit.

Submitted March 11, 1975.

Decided April 14, 1975.

Jon Kerian, Minot, N. D., for appellant.

David L. Peterson, Asst. U. S. Atty., Fargo, N. D., for appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge, ROSS, Circuit Judge, and TALBOT SMITH, Senior District Judge.*

ROSS, Circuit Judge.

Kenneth Freeman, Jr., an Indian residing on the Fort Berthold Indian Reservation in North Dakota, was indicted on a charge of first degree murder arising out of a shooting incident which occurred on the reservation. After a jury trial he was found guilty of second degree murder and was sentenced to ten years imprisonment by the district court.

On this direct appeal Freeman does not challenge the sufficiency of the evidence against him. However, he does raise four points for our consideration: (1) whether the jury selection plan in force in the District of North Dakota is discriminatory against reservation Indians and fails to comply with the Jury Selection and Service Act of 1968, 28 U.S.C. § 1861 et seq.; (2) whether the trial court erred in allowing an individu-

al who was acquainted with the victim and his family to serve on the jury; (3) whether the court erred in allowing the government to impeach two of the witnesses called by it by adducing evidence which showed discrepancies between their trial testimony and prior statements given to investigators; (4) whether the court erred in its instruction on voluntary intoxication. We affirm the judgment.

### I.

The random jury selection plan for the District of North Dakota was drawn up in accordance with the procedures of the Jury Selection and Service Act of 1968 and was transmitted to the Reviewing Panel of the Eighth Circuit which approved the plan on September 23, 1968. Certain revisions were approved on November 14, 1972. The plan provides that the source of names of prospective jurors is to be the list of actual voters in the general election in North Dakota in each presidential election year.[1]

On September 10, 1974, one day before the trial was scheduled to begin, Freeman, in accordance with 28 U.S.C. § 1867(a), filed a motion to dismiss the indictment or stay the proceedings on the grounds that the North Dakota plan substantially failed to comply with the provisions of the Act. That motion was denied the same day.

Freeman's attack on the jury selection plan is not based on any alleged constitutional weaknesses; nor does he claim that the plan is being administered in a deliberately discriminatory manner. Rather, he asserts that the exclusive use of voter lists violates 28 U.S.C. § 1863(b)(2) which states: "The plan shall prescribe some other source or sources of names in addition to voter lists where necessary to foster the policy and protect the rights secured by sections 1861 and 1862 of this title." The pertinent policy of section 1861 is that "all litigants in Federal courts entitled

---

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

1. Voter registration lists are not used because the state of North Dakota does not have voter registration requirements.

to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." Section 1862 simply states that no citizen is to be excluded from service as a juror on account of race, color, religion, sex, national origin or economic status. Since there is no allegation of actual discrimination, Freeman's claim centers on the assertion that the exclusive use of voter lists does not provide a "fair cross section of the community" because reservation Indians are underrepresented on those lists. This is so, according to Freeman, because reservation Indians vote in very small numbers in national and state elections for historical and cultural reasons. We are told that only 17 percent of the eligible reservation Indians in the Northwest Division of the district voted in the general election from which the names of prospective jurors were selected. Freeman contends that the result of relying exclusively on the voter lists is that, while Indians comprise two percent of the total population of the Northwest Division, there was only one Indian out of 174 prospective jurors called by the clerk—or one-half of one percent.

■ We reject this argument because, like other courts faced with similar claims, we do not believe that simply because one identifiable group of individuals votes in a proportion lower than that of the rest of the population the Act or the Constitution requires that a supplemental source of names be added to the voter lists for selection of prospective jurors. *See* United States v. Lewis, 472 F.2d 252, 256 (3d Cir. 1973); United States v. Guzman, 468 F.2d 1245, 1248 (2d Cir. 1972), cert. denied, 410 U.S. 937, 93 S.Ct. 1397, 35 L.Ed.2d 602 (1973); United States v. Ross, 468 F.2d 1213, 1216 (9th Cir. 1972), cert. denied, 410 U.S. 989, 93 S.Ct. 1500, 36 L.Ed.2d 188 (1973); Camp v. United States, 413 F.2d 419, 421 (5th Cir.), cert. denied, 396 U.S. 968, 90 S.Ct. 451, 24 L.Ed.2d 434 (1969). "[A] group of persons who choose not to vote do not constitute a 'cognizable group.'" United States v. Lewis, *supra*,

472 F.2d at 256 (footnote omitted). As indicated in United States v. Guzman, *supra*, 468 F.2d at 1248, the voting lists must be supplemented to obtain jurors from a fair cross section of the community only "where obstacles are placed in the paths of certain citizens attempting to register to vote." *See* Hallman v. United States, 490 F.2d 1088, 1092 (8th Cir. 1973). Here Freeman does not allege that reservation Indians are being kept from the ballot box by anything more than their own indifference to national and state government.

■ This rule that supplemental lists need not be used to insure representation on juries of groups who vote in low numbers is based on the well recognized principle that

a defendant in a criminal case is not constitutionally entitled to demand a proportionate number of his race on the jury which tries him nor on the venire or jury roll from which petit jurors are drawn.

Swain v. Alabama, 380 U.S. 202, 208, 85 S.Ct. 824, 829, 13 L.Ed.2d 759 (1965). The rationale of the rule as applied to the Act is stated very well in United States v. Jenkins, 496 F.2d 57, 65–66 (2d Cir. 1974).

In these circumstances there is no statutory or constitutional requirement that the voting list be supplemented as a source of prospective jurors.

## II.

After the jury was selected and sworn but before the presentation of the case had started one of the jurors, Mrs. Clara Akevenko, reported to the marshal that she was acquainted with the family of the victim of the shooting. The trial judge and the attorneys for both parties then questioned Mrs. Akevenko in the judge's chambers regarding how well she knew the family, how she had met them, whether she had connected the newspaper reports of the crime and the family she knew and whether she could serve as an impartial juror in the case. It developed that she knew the victim's family only slightly and had met them through

a mutual friend several years earlier. The judge found, based on this interrogation, that Mrs. Akevenko would be able to serve as a fair and impartial juror and overruled Freeman's objection to her being on the jury.

 "The qualifications of a juror within the statutory limits rest in the sound discretion of the trial court, and its rulings should not be interfered with on appeal except on a clear showing of abuse." United States v. Sferas, 210 F.2d 69, 75 (7th Cir.), cert. denied, 347 U.S. 935, 74 S.Ct. 630, 98 L.Ed. 1086 (1954). After a careful review of the interrogation of Mrs. Akevenko we are satisfied that the court's decision that she would be an impartial juror was proper, and we find no abuse of discretion in allowing her to sit on the jury.

### III.

One of the issues which developed at the trial was the amount of beer consumed by Freeman prior to the shooting as bearing on his intent. The government called as a witness one Louis Gwinn, a good friend of Freeman, who had told the F.B.I. and the prosecutor that he, Freeman and three others had drunk a little bit more than a case of beer over the course of an entire evening. However, once on the witness stand Gwinn revised upwards his estimate of the amount of beer consumed, testifying on cross-examination that they had started the evening with two cases of beer and had purchased more later. This differed from his testimony on direct and on redirect the government asked him about his prior statement to the F.B.I. There was no objection made by Freeman to this line of questions on redirect, and Gwinn acknowledged and attempted to explain the discrepancy.

Similarly, Freeman's grandfather was called as a government witness for the purpose of relating what he had earlier told an F.B.I. agent—that Freeman did not appear to be drunk when he saw him a short time before the shooting. Again the witness changed his story on the stand and stated that Freeman appeared

to have been drinking. He admitted that this conflicted with what he had earlier told the agent. There were no objections to any of the questions asked by the government's attorney.

However, when the government produced the F.B.I. agent as a witness and sought his testimony as to what Gwinn and the grandfather had told him, Freeman objected on the grounds that the government was seeking to impeach its own witnesses and that there had been no proper foundation. His objection was overruled and he raises this same argument on appeal.

 We need not and do not decide whether the trial court was in error in overruling the objection, for it is clear to us that even if it was an erroneous ruling, it was harmless under Fed.R.Crim.P. 52(a). Both witnesses had already testified without objection from Freeman that they had made the prior statements, that they were inconsistent with their current testimony, and both acknowledged the gist of what their earlier statements had contained. Freeman's substantial rights were not affected by allowing the F.B.I. agent to confirm the contents of those statements.

 To the extent that Freeman's assignment of error is aimed at the impeachment questions directed by the government at the two witnesses, we decline to consider such objections on appeal when no objections were made to the trial court. United States v. Price, 464 F.2d 1217, 1218–1219 (8th Cir.), cert. denied, 409 U.S. 1040, 93 S.Ct. 522, 34 L.Ed.2d 489 (1972); Fed.R.Crim.P. 51. And we cannot say in this case that any such objections come within the plain error rule. Fed.R.Crim.P. 52(b).

### IV.

 Freeman's argument to the effect that the instruction on intoxication was erroneous must be rejected on appeal for the simple reason that no objection was made as required by Fed.R. Crim.P. 30. United States v. Atkins, 487 F.2d 257, 260 (8th Cir. 1973). And even if the court's instruction was in error, we

cannot say that it constituted plain error since the instructions read as a whole reveal that the important elements of the instruction tendered by Freeman and omitted by the court—reasonable doubt and intent—were both elsewhere discussed and defined. *See* United States v. Pugh, 509 F.2d 766, 768–769 (8th Cir., 1975).

For the foregoing reasons the judgment of the district court is affirmed.