Willie James REED, Petitioner-Appellant,

v.

Louie L. WAINWRIGHT, Secretary, Department of Offender Rehabilitation, Respondent-Appellee.

No. 78–1413.

United States Court of Appeals, Fifth Circuit.

Jan. 8, 1979.

Rehearing and Rehearing En Banc Denied Feb. 26, 1979.

Bennett H. Brummer, Public Defender, Miami, Fla., for petitioner-appellant.

Robert L. Shevin, Atty. Gen., Tallahassee, Fla., Joel D. Rosenblatt, Paul Mendelson, Asst. Attys. Gen., Miami, Fla., for respondent-appellee.

Before THORNBERRY, GODBOLD and HILL, Circuit Judges.

PER CURIAM:

We affirm the judgment appealed here on the basis of the District Court's Order of Dismissal which we adopt and attach as an Appendix.

AFFIRMED.

APPENDIX

ORDER OF DISMISSAL

JOE EATON, District Judge.

Willie James Reed has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 attacking a life sentence imposed by the Circuit Court for the Eleventh Judicial Circuit in and for Dade County, Florida on May 23, 1972. Such sentence was imposed following a jury verdict of guilty to the crime of robbery.

Petitioner is presently in the custody of the respondent, Louie L. Wainwright, Secretary, Department of Offender Rehabilitation, State of Florida.

Petitioner presents the following issues for this Court's consideration:

I. WHETHER A STATE MAY SYSTEMATICALLY EXCLUDE FROM SERVICE UPON CRIMINAL JURIES CITIZENS WHO ARE OTHERWISE

QUALIFIED, ON THE BASIS THAT THEY HAVE NOT RESIDED IN THE STATE FOR ONE YEAR AND THEIR RESPECTIVE COUNTIES FOR SIX MONTHS, OR THEY ARE NOT FULLY QUALIFIED ELECTORS, BECAUSE THEY HAVE NOT REGISTERED TO VOTE OR HAVE BEEN PURGED FROM THE VOTER ROLLS IN ACCORDANCE WITH STATE STATUTE BECAUSE THEY HAVE NOT VOTED FOR A PERIOD OF TWO YEARS.

II. WHETHER STATE JURY OFFICIALS MAY CONSISTENT WITH DUE PROCESS OF LAW, MAINTAIN AND EMPLOY A JURY SELECTION SYSTEM BASED UPON ECONOMIC AND SOCIAL CLASSIFICATIONS SUCH AS OCCUPATION AND AGE, AND INCLUDE ON CARDS FROM WHICH PROSPECTIVE JURORS ARE CHOSEN DESIGNATIONS INDICATING RACE, POLITICAL AFFILIATION, PROPERTY OWNERSHIP, SEX, AGE, AND OCCUPATION.

Petitioner prior to trial filed a motion to dismiss the information or in the alternative to exclude the entire jury panel. This motion challenged the Dade County's jury selection system on the grounds that it excluded those otherwise qualified who were 18–20 [1] years old, that the categorization of prospective jurors into five groupings were illegal and improper, that the residency requirement was discriminatory, that the purging of those qualified to vote but who have not voted for a period of two (2) years was improper, and that the method used to select jurors limiting that selection to qualified voters was violative of the petitioner's Sixth and Fourteenth Amendment right to trial by an impartial and fair jury of peers.

The trial court denied the motion subject to the stipulation that certain testimony from a prior challenge similar to this one become part of the record. A jury trial resulted in a verdict of guilty.

On August 24, 1972, petitioner filed notice of appeal to the District Court of Appeal of Florida, Third District and in his assignments of error, included his challenge to the denial of the motion to dismiss the jury venire and a finding that Florida Statute 40.01 was constitutional. On December 13, 1972, petitioner filed a motion to transfer the appeal to the Supreme Court of Florida on the basis that the validity of a state statute had been passed upon by the trial court. The motion was granted and the case was transferred accordingly. On February 13, 1974, the Supreme Court of Florida in a five-two decision affirmed the judgment of the trial court and upheld the validity of Chapter 40 Fla.Stat., on its face and as applied. *Reed v. State*, 292 So.2d 7 (Fla.1974). Petitioner requested a rehearing before the Supreme Court of Florida which was denied on April 15, 1974. On November 11, 1974, a petition for a writ of certiorari was denied by the Supreme Court of the United States. *Reed v. Florida*, 419 U.S. 995, 95 S.Ct. 307, 42 L.Ed.2d 268.

Testimony stipulated to for purposes of the state court trial motion was elicited from Joseph D'Apice, jury commissioner, Ann H. Bobo and Margaret Haase, deputy clerks of the Circuit Court, and Willard Miller, supervisor of elections. Mr. D'Apice's testimony reflected that pursuant to the instruction of the presiding judge, he had selected a venire of 5,000 from a total of 525,000 possible names. It was stipulated that the jurors in attendance in petitioner's trial were selected by Mr. D'Apice. The selection was made by drawing cards from files located in the office of the clerk of the Circuit Court. Each card contained the name, address, race, sex, political affiliation and occupation of the prospective venireman as well as whether that person was

---

1. Florida Statute § 40.01(1) now provides: "40.01 Qualifications and disqualifications of jurors (1) Grand and petit jurors shall be taken from the male and female persons at least 18 years of age, who are citizens of this state and who have resided in this state for 1 year and in their respective counties for 6 months, and who are fully qualified electors of their respective counties; however, expectant mothers and mothers with children under 15 years of age, upon their request, shall be exempted from grand and petit jury duty. Amended by Laws 1975, c. 75–78, § 1, eff. June 6, 1975."

a freeholder in the city or county. Mr. D'Apice testified that his sole function was to pull the cards. He drew out every fifteenth or twentieth card from alphabetical files and put them in a box face down. He then personally turned the box over to the clerk of the Circuit Court. At this point, Mr. D'Apice's function as jury commissioner ceased.

Mrs. Ann Bobo, deputy clerk of the Circuit Court's jury department, testified that once the cards were brought to the clerk's office from the voter registration office, they were placed in different cabinets according to categories. One category was for persons who were unscreened and had never served. Another category consisted of doctors, nurses, teachers, and government employees, such as policemen, firemen, customs inspectors, and immigration employees. Mrs. Bobo testified that this occupational classification was not co-mingled with any other group and other occupational groups would be found in the "general unscreened" category. She testified also that once a card from the special occupations category was drawn, it was placed in the general classification upon its return to the files. Mrs. Bobo testified that a certain percentage of those in the special occupations category was drawn, and that any teacher that was pulled also came from that draw and not the general cabinet.

Margaret Haase testified that the jury commissioner, without looking at the cards, randomly drew from exclusive groups in the selection of prospective jurors: unscreened, those 65 and over, those with special occupations including teachers, doctors, clergy, military and pilots. Exempted were those cards representing persons who have served since 1969. According to Mrs. Haase, any card received from a doctor, for example, within the last sixty days would have been placed in the special occupation drawer. A card for someone over 65 would be placed in the 65 and over drawer and nowhere else. Mrs. Haase in addition testified that more cards were selected from the unscreened than the other three groups. With regard to this systemized selection from the specialized classifications, the witness explained:

"Because the other file being so much smaller would be easily depleted in a short length of time. You wouldn't have those people if you used them all up first."

Mrs. Haase's testimony appears to conflict with that of Mrs. Bobo insofar as she stated that if a teacher, for example, had been selected for service within the last sixty (60) days, that card would not be co-mingled in the general file, but would be kept temporarily in a file with other teachers, doctors, and medical personnel who had served during the three year period of 1970, 1971 and 1972.

Willard J. Miller, supervisor of elections of Dade County in turn testified that in his official capacity he took the names of registered voters and delivered them to the official jury commissioner of Dade County. He further testified that the residency requirement of one year in the state and six months in the county was upheld and only those who had met that requirement were included on the list he sent to the Circuit Court.

We turn first to the petitioner's allegation that Florida Statute 40.01 is unconstitutional *per se*. Specifically, petitioner contends that the one year state residency requirement and six month county residency requirement deny him equal protection of the law, and serve no compelling state interest nor further a rational basis in excluding otherwise qualified persons from serving as jurors in Dade County. In arguing that the state statutory scheme does not serve any compelling state interest, petitioner relies on *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975); *Hill v. Stone*, 421 U.S. 289, 95 S.Ct. 1637, 44 L.Ed.2d 172 (1975); *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); and *Dunn v. Blumstein*, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972). Petitioner quotes from *Taylor, supra*, 419 U.S. at 534, 95 S.Ct. at 699–700, where it was stated that "[t]he right to a proper jury cannot be overcome on merely

rational grounds." However, the full import of *Taylor*, in this Court's opinion, requires the application of the compelling state interest test only upon an initial demonstration that a state's jury selection system results in the exclusion of a distinctive class. In the instant case, those who do not meet Florida's residency requirement have not been shown by petitioner to constitute a particular economic, social, religious, racial, geographical or political group which is excluded from jury service as a result of such requirement.

Moreover, the courts have not recognized that the constitutional principle which struck down residency requirements in the context of voting rights, welfare benefits and public housing is applicable to an alleged denial of a defendant's right to a jury comprised of a fair cross section of the community. *United States v. Ross*, 468 F.2d 1213 (9th Cir. 1972), *cert. denied* 410 U.S. 989, 93 S.Ct. 1500, 36 L.Ed.2d 188; *United States v. Duncan*, 456 F.2d 1401 (9th Cir. 1972); *Craig v. Wyse*, 373 F.Supp. 1008 (D.C.Colo.1974). Rather, in this instance the traditional test of equal protection is whether the classification created may be justified on some rational basis is apposite. See *Flemming v. Nestor*, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960); *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369 (1911). In this regard, we agree with the Florida Supreme Court that the residency requirement furthers the nexus between the jury and the community whose laws the jury is duty-bound to uphold. *Reed v. State*, 292 So.2d 7, 10 (Fla.1974); *United States v. Armsbury*, 408 F.Supp. 1130, 1134 (D.C.Or.1976).

Petitioner next attacks F.S. § 40.01 on the basis that it requires a juror to be a qualified elector. Petitioner contends that this requirement deprives him of his Sixth Amendment right to trial by jury and of equal protection and due process guarantees as well. Petitioner argues that not only is the voter registration requirement unconstitutional, but that in addition the operation of Florida Statute 98.081, which calls for the purging of voters who have not registered for a period of two years, renders Florida's jury selection procedure unconstitutional. The result, claims petitioner, of the use of voter registration lists as the source for jury panels is the exclusion of those who are commonly known as "anti-establishment." However, assuming that in Dade County blacks, those of Oriental origin, those with Spanish surnames, women, young persons, and poor and deprived persons generally tend not to register to vote, petitioner has not met his burden of proof for demonstrating that the voting requirement deprives him of a jury comprised of a fair cross section of the community. "For defendant to sustain his burden of proof, he must present specific facts and figures, not general allegations." *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Hyde*, 448 F.2d 815 (5th Cir. 1971), *cert. denied* 404 U.S. 1058, 92 S.Ct. 736, 30 L.Ed.2d 745 (1972); *United States v. Armsbury, supra* at 1134. Petitioner must come forth with the objective results of the jury selection procedure in order to establish a prima facie case that a fair cross section of the community is not represented. *Billingsley v. Clayton*, 359 F.2d 13 (5th Cir. 1966). In light of the fact that those who choose not to register to vote or choose not to vote cannot be considered a cognizable group, *Camp v. United States*, 413 F.2d 419 (5th Cir. 1969); *Craig v. Wyse, supra*; *United States v. Dangler*, 422 F.2d 344 (5th Cir. 1970); *United States v. Duncan, supra*; *United States v. Ross, supra*; *Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974), and the Court being otherwise convinced that voter registration lists aid in efficiency and cost of judicial administration by supplying an acceptable list of a fair cross section of the community, Florida Statute § 40.01 is not unconstitutional *per se*.

Finally, petitioner claims that Dade County's particular application of Florida's jury selection statute is constitutionally infirm for the reason that it promotes the systematic, intentional use of social or economic group distinctions in the selection of petit jurors. As proof of such

**265**

systematic exclusion or proportional limitation, petitioner has established that Dade County retains separate filings for professional persons and governmental employees, and persons over the age of sixty-five (65), for those who have already served (in 1969 or prior), and those who are unscreened. The Florida Supreme Court said the following in regard to these separate filings:

"[T]he retention of separate filings . . after these groupings have lost their validity as factors in jury selection, represents a lack of efficiency, but does not represent a constitutional error. Such separate groupings should be abandoned, but there has been no showing that the intent or result of such groupings has been the establishment of a set ratio of members of these classes in the jury selection process . . ." *Reed v. State,* supra at 10.

In his dissenting opinion, Justice Ervin found the procedure utilized improper:

"The result of such a selection procedure is a systematic proportional inclusion of certain professional and age groups and, by necessity, the corresponding exclusion of other persons in occupations of lower economic and social status. Also, the procedures directly affect the appearance on the jury of persons within certain age groups who are equally suited for jury service and no less the peers of a defendant than those persons within the selected occupational and age groups. The Dade County Jury Commissioners were undoubtedly acting in mistaken good faith in insuring that well-educated and experienced venireman were selected along with those from less advantageous backgrounds. However, it is important to recognize that defendants and those constitutionally eligible for jury service are to be found in every stratum of society. As was stated in *Thiel v. Southern Pacific Co.* [328 U.S. 217, 66 S.Ct. 984, 90 L.Ed. 1181], *supra* :

"Jury competence is an individual rather than a group or class matter. That fact lies at the very heart of the jury system. To disregard it is to open the door to class distinctions . . . which are abhorrent to the democratic ideals of trial by jury." *Id.* at 220, 66 S.Ct. at 986.

We should not sanction a jury selection system that is manipulated so as to insure representation from certain social, economic and age groups." *Reed v. State,* supra at 14–15.

The record reflects that every fifteenth or twentieth juror was picked from one of four groups: the professionals, over 65 group, the unscreened, and those who had served in 1969 or prior thereto. Those who had served in 1970, 1971 or 1972 were excluded. (Justice Ervin's opinion notwithstanding.) [T. 136–137] This is significant for the reason that not only was a base for the Dade County juries intentionally and systematically comprised of professionals and persons over 65, but also included a certain percentage of those who had served in 1969 and before. This last fact is significant for the reason that it is contended that the effect of pre-*Silva* [1] procedures was still operative in the selection of juries at the time of petitioner's trial. However, this contention amounts to a conclusory allegation as the selection was blind, and the record reflects that those picked from the general, unscreened category comprised the vast majority of the selected jurors.

The State of Florida counters the petitioner's allegations of systematic intentional exclusion of certain groups by citing the highly exemptable character of those included in the professional category. Respondent further argues that the separate categories maintained had a de minimis effect since only every fifteenth or twentieth card was drawn from each of the distinctive cabinets.

1. On February 22, 1972 the Florida Supreme Court held in *State v. Silva,* 259 So.2d 153, that a system of purposeful racial proportionate representation which limited the number of blacks to serve on juries was unconstitutional. Findings of fact underlying this decision revealed that since 1966 a quota system had been employed in connection with the selection of jury lists in Dade County to either exclude or include a certain fixed percentage (15 to 19% of the qualified black citizens of Dade County who are registered voters).

In *Brown v. Allen*, 344 U.S. 443, 474, 73 S.Ct. 397, 416, 97 L.Ed. 469, it was stated: "Our duty to protect the federal constitutional rights of all does not mean we must or should impose on states our conception of the proper source of jury lists, so long as the source reasonably reflects a cross-section of the population suitable in character and intelligence for that civic duty."

The above-quoted statement reflects that the states are clearly provided great latitude in fashioning their jury selection system, while the federal courts retain the obligation to correct any constitutional infirmities. Logically, the decisions which arose under the supervisory powers of the Supreme Court over the federal courts (see e. g., *Ballard v. United States*, 329 U.S. 187, 67 S.Ct. 261, 91 L.Ed. 181; *Thiel v. Southern Pacific Co.*, 328 U.S. 217, 66 S.Ct. 984, 90 L.Ed. 1181; *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680) articulate more particular guidelines for federal juries than those cases scrutinized under a constitutional yardstick. See *Alexander v. Louisiana*, 405 U.S. 625, 637, 92 S.Ct. 1221, 31 L.Ed.2d 536 (footnote 4) (1971) (Douglas, J. concurring). In the instant case, the state procedure as applied in Dade County has not been shown to violate constitutional guidelines mandating that the result be designed to produce a representative cross section of the community. In particular, petitioner has not demonstrated the exclusion of or the proportional limitation of a distinctive class. *Taylor v. Louisiana, supra* ; *Carter v. Jury Commission*, 396 U.S. 320, 90 S.Ct. 518, 24 L.Ed.2d 549 (1970); *Cassell v. Texas*, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839 (1950) and *Hernandez v. Texas*, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866 (1954) do not support a finding to the contrary. *Taylor* dealt with the *exclusion* of women, *Hernandez* with the *exclusion* of Mexican Americans, and *Cassell* with the limitation of black representation on grand juries. The principles of these cases are not therefore automatically transferrable to a case of this nature. Instead, the group distinctions utilized in Dade County meet constitutional standards if they manifest a classification supported by a rational justification. The desire to prevent the inclusion of too many professionals and persons over age 65 on one jury panel appears justified in light of the highly exemptable character of these groups.

Petitioner has also failed to demonstrate any prejudice as a result of the inclusion of race, sex, political affiliation and ownership of real property on the cards representing the names of prospective jurors.

For these reasons, it is

ORDERED AND ADJUDGED that the Petition for Writ of Habeas Corpus is DENIED.

DONE AND ORDERED at Miami, Florida, this 2nd day of December, 1977.