Duane Ray PELTIER, Appellant,

v.

UNITED STATES of America, Appellee.

No. 88–5364.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 25, 1989.

Decided Feb. 14, 1989.

Duane Ray Peltier, pro se.

Norman G. Anderson, Asst. U.S. Atty., Fargo, N.D., for appellee.

Before ARNOLD, BOWMAN and MAGILL, Circuit Judges.

ARNOLD, Circuit Judge.

Duane Ray Peltier appeals the District Court's [1] dismissal of his pro se motion to vacate or correct his sentence, filed under 28 U.S.C. § 2255. Peltier's petition alleges a discriminatory jury selection process and improper use of a prior state conviction to enhance his sentence. The District Court rejected both arguments, and we affirm.

Peltier was indicted on May 15, 1986 for second-degree murder, and was convicted on August 8, 1986, following a four-day trial, of the lesser included offense of voluntary manslaughter in violation of 18 U.S.C. § 1112. On January 13, 1987, the District Court found Peltier to be a dangerous

---

1. The Hon. Paul Benson, Senior United States District Judge for the District of North Dakota.

special offender, requiring an enhanced sentence for the protection of the public, under 18 U.S.C. § 3575. He was given an enhanced term of fifteen years. This Court affirmed Peltier's conviction and sentence on direct appeal in an unpublished opinion, *United States v. Peltier*, 845 F.2d 1025 (8th Cir.1988) (per curiam).

## I.

■ Peltier, a member of the Turtle Mountain Chippewa Tribe of North Dakota, challenges the jury-selection process for the first time in his § 2255 petition. He argues that Native Americans constitute the largest racial minority in the District of North Dakota, yet members of this group are rarely summoned for jury service, particularly if a criminal case involves an Indian defendant. He further notes that none of the fifty-six individuals on the venire from which his jury was selected was an Indian. Peltier asserts that the venire selection practice used provides an opportunity for systematic and unexplained discrimination against Indians.

The District Court dismissed the discrimination argument because Peltier failed to raise it on direct appeal. The Court also rejected Peltier's attempt to fit his case within the rubric of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), a case involving prosecutorial peremptory challenges. Finally, the District Court noted that this Court had already scrutinized the jury selection plan of the District of North Dakota for alleged discrimination against Indians in *United States v. Freeman*, 514 F.2d 171 (8th Cir. 1975), and approved the plan as providing the required fair cross-section of the community.

We agree that Peltier waived his opportunity to argue discrimination in the jury selection process. Section 2255 is not intended to serve as a substitute for direct appeal. *Poor Thunder v. United States*, 810 F.2d 817, 821 (8th Cir.1987). Peltier's attempt to cure his default by alleging ineffective assistance of his appellate counsel is unconvincing. There is no reason here to question the selective judgment of Peltier's appellate counsel, particularly since past discrimination claims against this District's jury selection plan have proved unsuccessful. The plan was upheld not only in *Freeman*, but in *United States v. Turcotte*, 558 F.2d 893, 895 (8th Cir. 1977), which also involved a claim of discrimination against Native Americans.

■ A glance at the merits of Peltier's claim justifies his counsel's decision. The jury selection process used in Peltier's case, as in *Freeman* and *Turcotte*, provides that prospective jurors are drawn from "the list of actual voters in the general election in North Dakota in each presidential election year," *Freeman, supra,* at 172. While Indians may vote "in a proportion lower than that of the rest of the population," *id.* at 173, neither the Constitution nor any federal statute requires the District to compensate for such voting behavior in compiling its list of prospective jurors. All that is prohibited is *"deliberate exclusion of an identifiable racial group from the juror selection process"* (emphasis added). *Turcotte, supra,* at 895 (citing *Swain v. Alabama*, 380 U.S. 202, 208, 85 S.Ct. 824, 829, 13 L.Ed.2d 759 (1965)). We reject Peltier's argument that the government has failed to demonstrate that the circumstances in *Freeman* and *Turcotte* were identical to those in his case. The burden of showing an intentionally discriminatory practice that differed from the practice upheld in our earlier decisions lies with the petitioner in a § 2255 motion. Peltier has not met this burden and, at any rate, he has waived his opportunity to raise the issue.

## II.

Peltier also argues for the first time in his § 2255 motion that the sentencing court improperly considered a prior state conviction to enhance his sentence. In its 18 U.S.C. § 3575 findings, the sentencing court stated that the defendant had "previously been convicted in North Dakota State Courts of three felony offenses, each different from the others, and each punishable in the State Courts by imprisonment in excess of one year." *United States v.*

*Peltier,* Cr. No. C2–86–20, slip op. at 1 (D.N.D. Jan. 13, 1987).

Peltier challenges the use of one of these convictions (for the unauthorized use of a motor vehicle in 1981), noting that his actual sentence had been one year of imprisonment with six months suspended and six months of jail time, and that this conviction was converted from a felony into a misdemeanor once he completed his term of imprisonment, according to N.D. Cent. Code § 12.1–32–02(9). He argues that the remaining two prior convictions (for robbery and for carrying a concealed weapon in 1983) were insufficient by themselves to satisfy the enhancement statute's requirement of previous convictions for "two or more offenses committed on occasions different from one another," 18 U.S.C. § 3575(e)(1), because both offenses were part of a continuous set of activities. Indeed, the case numbers, dates, restitution amounts, and credit for time served on the two 1983 judgments of conviction suggest that the two offenses were connected, as Peltier alleges.

■ We agree with Peltier that the District Court should not have considered dispositive his failure to raise the sentencing issue on direct appeal. Rule 35(a) of the Federal Rules of Criminal Procedure specifically provides an express "post-judgment, collateral remedy for sentences imposed in an illegal manner," and this provision indicates that Congress did not wish Section 2255 interpreted to bar challenges to the manner of imposing sentence, solely because they had not been raised on direct appeal. *Poor Thunder, supra,* at 823.[2]

■ Nevertheless, we reject Peltier's challenge to his enhanced sentence on the merits. While the 1983 convictions for robbery and carrying a concealed weapon might not suffice under § 3575(e)(1), we find nothing wrong with counting the 1981 conviction for unauthorized use of a motor vehicle as one of the "two or more" predicate offenses for sentence enhancement. Section 3575(e)(1) requires that the defendant have been convicted previously for two or more offenses "punishable in such courts [including state courts] by death or imprisonment in excess of one year ..." The unauthorized use of a motor vehicle is subject to a maximum penalty of five years' imprisonment and a fine of five thousand dollars under N.D. Cent. Code §§ 12.1–23–06(3) and 12.1–32–01(4).

Whether North Dakota chooses to label an offense as a misdemeanor or a felony after completion of a particular sentence is of secondary importance; what matters is the potential penalty which the offense carries under state law. See *United States v. Currier,* 821 F.2d 52 (1st Cir.1987). In the interpretation of similar language in the federal firearms statutes, 18 U.S.C. § 922 and 18 U.S.C.App. § 1202(a)(1), the possibility of more than one year's imprisonment controls, regardless of the particular punishment or the state law characterization of the offense as a felony or misdemeanor. *Dickerson v. New Banner Institute, Inc.,* 460 U.S. 103, 113, 103 S.Ct. 986, 992, 74 L.Ed.2d 845 (1983) ("It was plainly irrelevant to Congress whether the individual in question actually receives a prison term; the statute imposes disabilities on one convicted of 'a crime *punishable* by imprisonment for a term exceeding one year.' § 922(g) (emphasis supplied)."); *United States v. Glasgow,* 478 F.2d 850, 852 (8th Cir.), *cert. denied,* 414 U.S. 845, 94 S.Ct. 107, 38 L.Ed.2d 83 (1973); *United States v. Woods,* 696 F.2d 566, 568 (8th Cir.1982). It would undermine express congressional intent, and frustrate the uniform interpretation of the Dangerous Special Offenders Statute, to make the application of § 3575(e)(1) hinge on the state's after-the-fact labeling, rather than the potential penalty.

We affirm the District Court's dismissal of the § 2255 motion, holding that the petitioner waived his racial-discrimination claim, and that the challenge to his enhanced sentence is without merit.

AFFIRMED.

---

**2.** Peltier's counsel did object to the introduction of the 1981 conviction at the sentencing hearing, and was overruled by the District Court. Tr. at 439–40.