74 F.3d 1247
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Moises DE LA MORA, Defendant-Appellant.
 No. 94-50567.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 14, 1995.
Decided Jan. 9, 1996.
 
 Before: BOOCHEVER, T.G. NELSON and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Since the parties are familiar with the facts, we need not recite them here. Moises De La Mora appeals from his conditional plea of guilty and the resulting ten-year sentence.
 
 I. Denial of Funds
 
 3
 A denial of funds for expert services will not be reversed on appeal unless the appellant establishes by clear and convincing evidence that prejudice occurred on account of the judge's failure to authorize the requested funds. United States v. Sanders, 459 F.2d 1001, 1002 (9th Cir.1972).
 
 
 4
 De La Mora appeals the district court's denial of his request, under the Criminal Justice Act, 18 U.S.C. 3006A(e), for funds to conduct an empirical study to determine whether non-voters are a "cognizable group" for purposes of showing that the composition of the grand jury was unconstitutional.
 
 
 5
 Courts have rejected contentions by defendants that non-voters, per se, are a cognizable group for purposes of the Duren[1] test. Camp v. United States, 413 F.2d 419, 421 (5th Cir.), cert. denied, 369 U.S. 968 (1969); United States v. Afflerbach, 754 F.2d 866, 870 (10th Cir.), cert. denied, 472 U.S. 1029 (1985). In United States v. Suttiswad, 696 F.2d 645, 649 (9th Cir.1982), we refused to recognize all non-whites as a separate cognizable group. Further, courts have already acknowledged that Hispanics and other ethnic groups were "cognizable" groups. Therefore, we affirm the district court's denial of funds for De La Mora's empirical study.
 
 II. Post-Arrest Statements
 
 6
 In determining whether De La Mora's decision to waive his Fifth Amendment privilege was voluntary, we inquire into "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution...." Collazo v. Estelle, 940 F.2d 411, 415 (9th Cir.1991) (en banc) (quotations omitted), cert. denied, 502 U.S. 1031 (1992). The voluntariness inquiry focuses on whether police conduct was constitutionally acceptable. Derrick v. Peterson, 924 F.2d 813, 819 (9th Cir.1990), cert. denied, 502 U.S. 853 (1991).
 
 
 7
 De La Mora does not allege that Government officials threatened him with physical harm if he did not cooperate. De La Mora does not allege that he was told by Government officials that his refusal to cooperate would be communicated to the prosecutor or court. Further, during his arrest and detainment, De La Mora never stated, or indicated by his conduct, that he did not want to communicate with the officers or that he wanted to speak to an attorney. The fact that the agents allowed De La Mora to see incriminating photographs of himself does not render his subsequent waiver invalid. See United States v. Pheaster, 544 F.2d 353, 367 (9th Cir.1976), cert. denied, 429 U.S. 1099 (1977) (holding that a suspect's confession upon being shown an incriminating photograph was not obtained in violation of the Fifth Amendment). There is no evidence of involuntariness.
 
 
 8
 A Miranda waiver must be voluntary and made with full awareness in order to be valid. Collazo, 940 F.2d at 415. Voluntariness already having been established, "the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." Colorado v. Spring, 479 U.S. 564, 573 (1987).
 
 
 9
 De La Mora does not allege that he did not understand the basic privilege guaranteed by the Fifth Amendment, or that he misunderstood the consequences of speaking to the agents. In fact, it appears that De La Mora weighed his options by requesting to see the evidence against him before he made his decision to speak to the agents. Informed of his Fifth Amendment rights, De La Mora made a voluntary, knowing, and intelligent waiver of those rights.
 
 
 10
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Duren v. Missouri, 439 U.S. 357 (1979)