476 A.2d 439

**COMMONWEALTH of Pennsylvania**

v.

**Louis BELL, Appellant.**

Superior Court of Pennsylvania.

Argued June 16, 1983.

Filed April 19, 1984.

Petition for Allowance of Appeal
Denied Aug. 6, 1984.

36

38

40

Harold D. Borek, Norristown, for appellant.

J. William Ditter, III, Assistant District Attorney, Norristown, for Commonwealth, appellee.

Before CERCONE, President Judge, and McEWEN and HOFFMAN, JJ.

CERCONE, President Judge:

Appellant was tried before a jury and convicted of rape, involuntary deviate sexual intercourse, indecent assault, criminal attempt-murder, simple assault, aggravated assault, recklessly endangering another person, terroristic threats, instruments of crime and criminal trespass. Post-trial motions were filed, argued and subsequently denied. Appellant was sentenced to a total term of incarceration of twenty-five (25) to fifty (50) years.

■ Appellant has taken this appeal raising a multitude of issues. His Statement of Questions Involved is clearly in violation of the limitations established by Pa.R.A.P. Rule 2116(a). While we condemn such a flagrant violation of that rule, we will nonetheless address the numerous issues raised here. Appellant's issues may be divided into four categories: pre-trial errors, trial errors, ineffectiveness of counsel claims, and sentencing errors.

As to a number of issues we find that the trial court's opinion adequately disposed of appellant's contentions and therefore we see no need to further elaborate on the court's decision.[1]

---

1. Pre-trial errors:
 (1) Did the trial court err in not granting appellant's pre-trial motion for change of venue?
 (2) Did the trial court err in not granting appellant's pre-trial motion for suppression of evidence?

Among the remaining issues, the first ones we will address are those relating to pre-trial motions.

### Pre-trial Motions

Appellant complains that his trial did not commence within the prescribed time of Rule 1100, Pa.R.Crim.P. Appellant was arrested and charged on February 25, 1980. Thus the last day for trial under Rule 1100, barring any excludable time, would have been August 23, 1980. On March 7, 1980 appellant was judged incompetent pursuant to the Mental Health Procedures Act[2] and he was admitted to Farview State Hospital on March 27, 1980. On May 5, 1980, appellant was determined to be competent by the staff of

Trial errors relating to fair trial issues: Was appellant denied a fair trial,

(9) by reason of a denial of permission to introduce testimony of prior sexual relations between the victim and the appellant as rebuttal to identification evidence submitted by the Commonwealth;

(11) by the denial of appellant's motion for a court ordered polygraph examination of the victim;

(13) by denial of appellant's motion for a mistrial when the Commonwealth introduced testimony regarding appellant's use of drugs;

(14) by denial of appellant's motion for a mistrial when after the appellant's outbreak in the courtroom the Court informed the jury that trial counsel was appointed;

(16) by allowing the testimony of Gino DiFrederico into the record over defense hearsay objection;

(17) by denial of appellant's objection to Dr. Vitelli being qualified as an expert witness in psychiatry;

(18) by denial of appellant's objection to the introduction of Commonwealth witness Starling's testimony regarding appellant's drinking habits;

(19) by denial of appellant's objection to the admission of the victim's robe, Commonwealth's Exhibit "C–1" the paring knife, Commonwealth's Exhibit "C–6", "C–7" and "C–8" Photographs of the apartment, Commonwealth's Exhibit "C–17" and "C–18" photographs of appellant at the time of the strip search into evidence;

(20) by reason of denial of appellant's demurrer on bill of information 1612.3—80 Criminal Attempt-Murder;

(21) by reason of the verdict being contrary to the weight of evidence and to the law?

Sentencing error:

226b. Was the sentence imposed contrary to law in that each of the minimum and maximum sentences imposed by the trial court on appellant for his conviction on the respective charges of rape, involuntary deviate sexual intercourse and criminal attempt is manifestly excessive?

**2.** 50 Pa.S.A. § 7101 *et seq.*, in particular § 7304.

Farview and this information was forwarded to the court on May 12, 1980. Appellant was returned to the Montgomery County Prison on June 2, 1980. The Commonwealth filed a petition on August 7, 1980 to extend the time for trial, requesting an additional 87 days to commence trial.[3] A hearing was held on August 7, 1980 after which the Rule 1100 run date was extended from August 23, 1980 (the 180th day from appellant's arrest) to November 18, 1980 (87 days from August 23). On October 28, 1980, a hearing was held on appellant's pre-trial motions for change of counsel and change of venue; both motions were denied. On the following day the remaining pre-trial motions were disposed of and jury selection commenced. The jury was sworn in on October 30, 1980 and the taking of testimony began that same day.

Appellant contends that only the period of March 7, 1980 through May 5, 1980 (the day he was determined to be competent) was excludable time under Rule 1100, since he only was unavailable during that period. The prosecution in turn argues that he was unavailable from March 7, 1980 to at least May 12, 1980, when the court was advised of appellant's competency to stand trial. This period or 66 days would extend the run date to October 28, 1980. The Commonwealth argues that certain pre-trial motions, which had been reserved for the time of trial, were considered on October 28, and hence trial commenced for purposes of Rule 1100 on that day. Therefore, the Commonwealth points out, although an extension of 87 days was granted, 66 days were sufficient since trial began on the 66th day.

While it is clear that a defendant will be deemed unavailable for purpose of Rule 1100 when he is mentally incompetent, see comment to Rule 1100(d)(3)(i),[4] here we must determine when such unavailability ended.

---

**3.** This represents the amount of time between appellant's adjudication of incompetency on March 7, and his release from Farview on June 2, 1980.

**4.** Comment:

■ In the case of *Commonwealth v. Ware*, 459 Pa. 334, 329 A.2d 258 (1974), it was held. that it was proper to exclude a "reasonable period" which was consumed in having an appellant committed. However, once the court deems a defendant is no longer incompetent, the defendant is no longer unavailable and any further delay will not be excluded from the Rule 1100 run period. *Commonwealth v. Fisher*, 283 Pa.Superior Ct. 370, 424 A.2d 510 (1980); *Commonwealth v. Quinlan*, 259 Pa.Superior Ct. 536, 393 A.2d 955 (1978).

■ The current facts may be distinguished from *Fisher* and *Quinlan*. In both of those cases, it is clear that the delay at issue occurred after the court had either determined that the defendant was competent or had been advised that the defendant was competent. Here, we are concerned with the period between May 5, when the hospital staff found appellant competent and May 12 when the trial court was so apprised.[5] We hold that just as in *Ware*, where delay was incurred in the commitment process, a reasonable period of time, between when psychiatric professionals determined a defendant is competent and when the court is notified of such determination, should also be excluded for purposes of Rule 1100. Recently, in *Commonwealth v. Derrick*, 222 Pa.Superior Ct. 517, 469 A.2d 1111 (1982) this court affirmed the principle that a defendant's unavailability may cause a delay greater than the actual period of unavailability and such entire period may be excluded. Applying such holding to the current case we find the seven day delay in advising the court of appellant's

For purposes of subparagraph (3)(i), in addition to any other circumstances precluding the availability of the defendant or his attorney, the defendant should be deemed unavailable for the period of time during which he contested extradition, or a responding jurisdiction delayed or refused to grant extradition; or during which the defendant was physically or mentally incompetent to proceed; or during which the defendant was absent under compulsory process requiring his appearance elsewhere in connection with other judicial proceedings.

5. Due to our holding *infra*, we need not rule on whether the period between May 12 and June 2 is excludable.

availability is attributed to appellant's prior incapacity. Therefore, the Rule 1100 run date was properly extended, at least, to October 28. We must now determine whether trial "commenced" by or on that day.

██ Relying upon the comment to Rule 1100(b),[6] our Supreme Court has held that where the trial court reserves the resolution of pre-trial motions until the time of trial, and the court after resolving such pre-trial matters proceeds directly into the guilt-determining process, it will be deemed that trial commenced with the hearing of the pre-trial motion. *Jones v. Commonwealth*, 495 Pa. 490, 434 A.2d 1197 (1981); *see also Commonwealth v. Machi*, 294 Pa.Superior Ct. 338, 439 A.2d 1230 (1982). In this case, the trial court explicitly reserved the resolution of both the motion for change of venue and the motion to suppress evidence, for the time of trial. The issue of venue was resolved on October 28, followed by the suppression hearing and jury selection on October 29. The "guilt-determining process", with the jury being sworn and testimony taken, commenced the following day. Therefore, we find that for purpose of the speedy trial rule, trial commenced on October 28, and therefore trial was timely.

Appellant also complains that the court erred in not granting his request for the appointment of new counsel. Prior to trial, appellant had addressed several letters to the president judge (who was not the presiding judge) airing his complaints with counsel. Prior to the hearing on the change of venue, appellant again raised orally before the presiding judge his complaint against his counsel. He contended that counsel was incompetent, unprepared and had not consulted with him often enough. As a demonstration of counsel's ineffectiveness, he contended that counsel had

6. The comment reads in part:
 It is not intended that preliminary calendar calls should constitute commencement of a trial. A trial commences when the trial judge determines that the parties are present and directs them to proceed to voir dire, or to opening argument, or to the hearing of any motions which had been reserved for the time of trial, or to the taking of testimony or to some other such first step in the trial.

not filed pre-trial motions until after he had challenged counsel's stewardship for not doing so. Appellant lacked confidence in counsel and contended that irreconcilable differences existed. The court refused the request.[7]

Appellant claims his request was not based upon "mere shortness of time spent conferring" with him. *See Commonwealth v. Weakland,* 273 Pa.Superior Ct. 361, 417 A.2d 690 (1979). Instead he complains that counsel did not adequately represent him on pre-trial motions. In particular he refers to counsel's delay in filing pre-trial motions [8] and his failure to consult with appellant before counsel discussed the possibility of a plea bargain with the district attorney. Appellant concluded that his lack of confidence was justified by the divergence between what he and counsel thought was the best way to proceed. He contends counsel desired a guilty plea, while appellant wanted to go to trial.

At the hearing before the trial court on the request for new counsel, trial counsel explained that the reason he delayed filing pre-trial motions was because the Commonwealth had not provided him with timely discovery, and in exchange for trial counsel's patience regarding discovery, the Commonwealth agreed to allow counsel to delay the filing of pre-trial motions until discovery had been completed. The Court found that counsel was a competent attorney, who had competently represented appellant on pre-trial matters and counsel was prepared to go to trial. While appellant was free to explain his position, he did not elaborate upon what he perceived to be a disagreement as to the methods of proceeding.

 This court, sitting *en banc*, recently reviewed applicable principles concerning a request for the appointment of new counsel in *Commonwealth v. Egan,* 322 Pa.Superior Ct. 71, 469 A.2d 186 (1980). After noting that an indigent

---

7. Appellate counsel, who also prepared and argued post-trial motions, was appointed subsequent to the verdict.

8. No sanction was imposed upon appellant for the delayed filing.

defendant does not have a right to counsel of his choice, we went on to state:

> Appellant's mere dissatisfaction with counsel does not work a violation of his Sixth Amendment right to counsel.

> \* \* \* \* \* \*

> This is in accord with the law regarding continuances. The decision whether to grant a continuance is within the discretion of the court below. *Commonwealth v. Kittrell*, 285 Pa.Super. 464, 427 A.2d 1380 (1981). An appellate court cannot disturb a continuance decision absent an abuse of that discretion.

> \* \* \* \* \* \*

> What would make such a request justifiable? All such requests cannot be *per se* justifiable. That would enable a criminal defendant to indefinitely delay his going to trial. He would simply have to announce to the court at every trial date that he was dissatisfied with his counsel and wanted a continuance to obtain new counsel. Nor, as noted above, can all such requests be considered *per se* unjustifiable. (322 Pa.Superior Ct. 79, 469 A.2d 190.)

While a defendant may reject appointed counsel "for good cause shown", *Commonwealth v. Tyler*, 468 Pa. 193, 360 A.2d 617 (1976); Pa.R.Crim.P., Rule 318, as noted above "mere dissatisfaction" is not adequate. While *Tyler* held that "irreconcilable differences", if proven, equals "good cause shown", here appellant has failed to show such. *See Commonwealth v. Weakland, supra* 273 Pa.Superior Ct. at 366 n. 2, 417 A.2d at 692 n. 2; compare, *Commonwealth v. Tyler, supra; Commonwealth v. Nicolella*, 307 Pa.Superior Ct. 96, 452 A.2d 1055 (1982). The current case is similar to *Commonwealth v. Johnson*, 309 Pa.Superior Ct. 117, 454 A.2d 1111 (1983), where the defendant asserted a lack of confidence in counsel's "attitude". There we found no abuse of discretion in denying a request for new counsel. We here likewise find no abuse of discretion.

Appellant next complains that the court erred in not permitting appellant to waive trial by jury. The judge

refused the attempted waiver of a jury trial because he had heard all of the pre-trial motions and felt he could not "properly" sit as the fact finder. The court inquired of the court administrator and was informed that should the case be reassigned, the administrator was not sure when next the case could be tried. Therefore, the court with an eye to the speedy trial rule, and the fair trial requirement held that the appellant was to be tried by a jury. We find no abuse of the trial court's discretion in refusing the request for a non-jury trial. *See Commonwealth v. Sorrell*, 500 Pa. 355, 361, 456 A.2d 1326, 1329 (1982).

## Trial Errors

Complaint is made regarding the jury array. Appellant contends that the jury panel was selected from the list of registered voters which he argues systematically excluded certain groups. Additionally, he contends a number of jurors should have been struck for cause. Appellant argues that, taken together, the above circumstances interfered with his right to be tried by an impartial jury representative of the community.[9]

*Commonwealth v. Jones*, 465 Pa. 473, 479, 350 A.2d 862 (1976), (*Jones II*) relied upon in *Commonwealth v. Edwards*, 493 Pa. 281, 426 A.2d 550 (1981), addressed the very issue raised by appellant here.

We reject this argument because we do not believe the Constitution requires a source of prospective jurors other than those names gathered from the voter registration lists simply because an identifiable group of individuals may vote in a proportion lower than that of the general population. As the Fifth Circuit Court of Appeals stated in *Camp v. United States*, 413 F.2d 419, 421 (5th Cir. 1969), cert. denied, 396 U.S. 968, 90 S.Ct. 451, 24 L.Ed.2d

9. The trial court found that appellant had not timely raised such claims and therefore they were waived. Appellant goes on to allege that counsel was ineffective as to such claims, therefore we must determine whether counsel had any reasonable basis for not raising them. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967).

434 (1969): "Use of [voter registration] lists as the sole source of names for jury duty is constitutionally permissible *unless this system results in the systematic exclusion of a 'cognizable group or class of qualified citizens.'* " [Emphasis added.] And a group of persons who have failed to register to vote has never been considered to constitute a "cognizable group." *See United States v. Lewis,* 472 F.2d 252 (3rd Cir.1973); *United States v. Freeman,* 514 F.2d 171 (8th Cir.1975); *Camp v. United States, supra; Grimes v. United States,* 391 F.2d 709 (5th Cir.1968).

We must observe that in *Commonwealth v. Jones,* 452 Pa. 299, 304 A.2d 684 (1973), *(Jones I)*, the court remanded to give the defendant the opportunity to prove his claim. After remand, the *Jones II* court found no merit to the claim. While appellant has not had a chance to support his claim before the trial court, we see no need to remand.

In his brief, appellant cites figures obtained from a census report indicating that voter registration does not accurately reflect the age or race of the populace as a whole. He concludes that the census figures demonstrated that blacks and young people were systematically excluded from jury duty. Such a claim must fail in light of *Jones II* where the court held that those who fail to exercise their franchise by failing to register do not constitute a "cognizable group" that is systematically excluded. Appellant has failed here to allege an exclusion that if proven would require the grant of relief, therefore there is no need to remand. *See Commonwealth v. McIntosh,* 266 Pa.Superior Ct. 425, 405 A.2d 507 (1979).

Appellant also contends that during voir dire three jurors acknowledged reading about appellant's case; two jurors admitted having a cousin who was a police officer; one juror had a family member killed as a result of a criminal act; and an alternate had been previously attacked with a knife. He would have us infer that such jurors should have been struck for cause and therefore counsel was ineffective in failing to attempt to have them struck.

However, prior to having the jury sworn in, the trial court inquired individually of the prosecutor, defense counsel, and appellant himself, whether each was satisfied with the jury as impaneled and seated. Appellant, himself, as well as counsel expressed satisfaction with the jurors chosen. Appellant having been given the opportunity to raise any objections to the jurors and having failed to do so is now precluded from raising such question. *Commonwealth v. Kubacki*, 208 Pa.Superior Ct. 523, 224 A.2d 80 (1966); *see also Commonwealth v. Boone*, 467 Pa. 168, 354 A.2d 898 (1976).

Appellant further argues that he was denied a fair trial because state officials prevented him from preparing for trial. He premises this contention, in great part, on the period he was either at Farview or waiting to be placed at Farview. We see little reason to address this claim in detail. Counsel had been appointed to represent appellant, whom we have found filed various pre-trial motions and was effective at least on pre-trial matters. Therefore, we find appellant suffered no prejudice.

Appellant complains that the Commonwealth violated Rule 305 B(1)(d), Pa.R.Crim.P., which requires the prosecution to disclose to a defendant any identification of a defendant and Rule 305 D imposing a continuing duty to disclose. Shortly before trial, the assistant district attorney advised the trial court and defense counsel that it had just come to his attention that a prosecution witness would testify that she had seen appellant in the victim's apartment building on the night of the attack. Prior to this disclosure, the witness, who was a neighbor of the victim was expected to merely recite events leading up to the discovery and reporting of the assault. The trial judge held that the witness could not testify as an identification witness, but could testify that she saw a man present and could give a general description of that man.

Appellant argues that such testimony amounted to a *"de facto"* identification of him. After reviewing the

testimony, we must disagree. The description given was general. The jury was advised that the witness had only observed the individual for five seconds and was unable to recall any details concerning his attire. Rule 305 E, Pa.R. Crim.P. provides:

E. Remedy

If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, [requiring disclosure] the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances.

The trial court has broad discretion in determining the proper remedy in such situations. *Commonwealth v. Keeler*, 302 Pa.Superior Ct. 324, 448 A.2d 1064 (1982); *Commonwealth v. Parente*, 294 Pa.Superior Ct. 446, 440 A.2d 549 (1982). In the circumstances of this case we can find no abuse of such discretion.

Appellant next combines three unrelated claims and in effect argues that the Commonwealth's trial methods and the court's response thereto were improper. First, he contends that the Commonwealth's attorney was improperly permitted to ask the victim leading questions. He goes on to contend that the Commonwealth's failure to call a taxi driver amounted to a *de facto* suppression of that witness' testimony. And third he implies that the court's denial of a petition to appoint an investigator for purposes of post-trial motions was improper.

In modern practice, the use of leading questions lies within the discretion of the trial court and a court's tolerance or intolerance of the leading questions will not be reversed absent an abuse of its discretion. *Commonwealth v. Reidenbaugh*, 282 Pa.Superior Ct. 300, 422 A.2d 1126 (1980); *Commonwealth v. Guess*, 266 Pa.Superior Ct. 359, 404 A.2d 1330 (1979). We have reviewed that portion of the notes of testimony of which appellant complains and we can

not find an abuse of discretion on the part of the court or any impropriety on the part of the prosecutor requiring any relief. The prosecutor sought to aid the victim in telling her account of the assault upon her by the use of leading questions and the court sustained some objections raised by appellant and overruled others.

The other unrelated two claims which appellate counsel has sought to integrate into this contention were not raised in post-trial motions nor in appellant's statement of issues complained of on appeal and therefore we are precluded from addressing them. *See Commonwealth v. Silver,* 499 Pa. 228, 238, 452 A.2d 1328, 1333, (1982); Pa.R. A.P. No. 1925(b).

The last trial error raised by appellant which we must address is whether statements made by the victim to a nurse in the emergency room were objectionable hearsay and whether it was error for the court, upon request by the jury, to read to the jurors from the transcript of the testimony, the nurse's direct testimony previously given, without including an objection voiced by the defense and, also, without reading the cross-examination of the witness.

As to whether the victim's statements as related by the nurse fall into the excited utterance exception to the hearsay rule, we will rely upon the trial court's discussion finding that they do so qualify. For additional support we observe that it was held in *Commonwealth v. Gore,* 262 Pa.Superior Ct. 540, 396 A.2d 1302 (1978); and *Commonwealth v. Dugan,* 252 Pa.Superior Ct. 377, 381 A.2d 967 (1977) that even though statements were made several hours later than the incident which cause them to be made, they were still "spontaneous" for purpose to the exception to the hearsay rule.

After the jury had gone out to deliberate it requested that the court read to it a portion of the emergency room nurse's testimony. The court directed the court reporter to read the following excerpt:

By [District Attorney]

(Q) Will you tell us what, if you can recall, she might have told you about the night before?

(A) At one point she mentioned to me that she was doing her laundry. And she went from her laundry room into her apartment. She found a man sitting in her apartment waiting for her. She did mention knowing this man. And I asked her, I said, you knew him? Because I was surprised looking at her that someone would hurt in this fashion if she knew him. And she said, I have seen him around, he's been hanging around.

Later on as I was continuing to examine her to see what other bruises or contusions or lacerations she might have had on her body, I did see that she had these two bruised areas behind the ears. And in her rambling she had mentioned that she had been held under water, and I assumed that it was in a bathtub. I don't remember her telling me it was a bathtub. But, she said she had been held under water and the man thought she was dead. The man thought he had drowned her.

[Defense Attorney]: Objection. I think that is conclusionary, Your Honor. I don't think that this witness or another witness could make a conclusion.

THE COURT: I'll sustain the objection. Ladies and Gentlemen of the Jury, you should disregard that conclusion.

By [District Attorney]

(Q) Did she say anything else to you that you can recall at this time?

(A) Not that I can recall. Like I said, she had been rambling, and things that she was saying were not fitting in. She was trying very hard to remember.

And at this point we did have to try to relax her and tell her, you know, later on it would all come back, but that she shouldn't think about it right now. Our main concern at this time was making sure that she was all right.

(Q) Thank you. Cross examine.

At that point, the jury foreman indicated that the above portion was sufficient. Prior to the reading, the court reporter had inquired of the court whether the objection and ruling should be included in the reading, the court directed that it be excluded. Therefore, the jury was not reapprised of the objection and of the court's instruction to disregard the conclusion.

When a jury requests that recorded testimony be read to it to refresh its memory, it rests within the trial court's discretion to grant or deny such request. *Commonwealth v. Peterman*, 430 Pa. 627, 244 A.2d 723 (1968); *Commonwealth v. McBall*, 316 Pa.Superior Ct. 493, 463 A.2d 472 (1983). The court must be careful so as not to place undue emphasis upon those portions which are requested. *Peterman, supra, Commonwealth v. Coley*, 297 Pa.Superior Ct. 435, 444 A.2d 110 (1982); *Commonwealth v. Banks*, 267 Pa.Superior Ct. 10, 405 A.2d 1277 (1979). The parameters concerning the extent that testimony should be read to the jury are to be set by the juror's request. *Commonwealth v. Peterman, supra*. Hence the court, if it deems it appropriate, may permit the jury to hear only a portion of a witness' testimony. *See Commonwealth v. Coley, supra*.

Applied to the facts of this case, we find no abuse of discretion in the court's initial decision to permit the jury to again hear the testimony of the emergency room nurse. Trial testimony started on October 31, 1980 and was not concluded until November 5, 1980. The trial was interrupted by a weekend and a holiday. The testimony here in question was given two days prior to the case going to the jury, and therefore it was understandable that the jury wished to be refreshed. Such recall of the testimony did not place undue emphasis, beyond its intrinsic value, upon such testimony. While we believe the better practice would have been for the court to have also read the cross-examination of the witness, we do not find that so limiting the reading amount to an abuse of discretion. As noted above the jurors' request limits what testimony should be read.

Here the jurors indicated that they were interested only in the direct examination. While in another context such limitation might place undue influence upon the direct testimony, here it does not. We have reviewed appellant's cross-examination of the witness and find that it was short in duration and was uneventful.

A more difficult issue is raised in the complaint that the court erroneously omitted appellant's objection, *which had been sustained,* from its reading of the nurse's testimony to the jurors. It is unclear whether counsel objected to the assumption that the attempted drowning occurred in a bathtub or to the conclusion that the actor thought he had drowned the victim, or both. Nonetheless, as the objection was sustained and the jury was directed to disregard the conclusion, the testimony as read back to the jury should have either included the objection and the court's response or else both the objection and the objectionable testimony should have been edited out. However, we find that any error was harmless beyond a reasonable doubt.

The often repeated rule is:

Such error is "harmless only if the appellate court is convinced beyond a reasonable doubt that the error is harmless." *Commonwealth v. Story,* 476 Pa. 391, 405–406, 383 A.2d 155, 162 (1978). Unless the court determines that the error could not have contributed to the verdict, the "reasonable possibility" that the error did contribute to the verdict negates any notion of harmlessness. *Id.,* 476 Pa. at 409, 383 A.2d at 164.

*Commonwealth v. Turner,* 499 Pa. 579, 584, 454 A.2d 537, 540 (1982). In the case before us there was overwhelming evidence that the victim had been raped and then attempts were made to strangle and drown her and finally she was stabbed in the chest with a paring knife. Appellant's defense was that he had not committed the horrendous deeds since his defense of alibi placed him elsewhere. Accordingly, whether the victim was held under water *in her bathtub only to be released because her assailant thought*

*she had been drowned,* was not of importance to his defense and could not have contributed to the verdict.

## Ineffectiveness of Counsel

Appellant also contends that trial counsel was ineffective in failing to contact and produce alibi witnesses on his behalf.[10] Among such witnesses are a bartender who supposedly could establish that the prosecutrix knew appellant socially prior to the attack; a case worker who may have been able to establish that the victim knew the appellant prior to the rape; the prosecutrix's son, who according to defense testimony was familiar with appellant; and a cab driver, who appellant believed would testify that he had delivered a fare, other than appellant, to the victim's apartment complex on the night in question.

We must first note that none of the above witnesses are alibi witnesses, nor were they present on the night in question at the scene of the crime. As to the case worker and any possible alibi witnesses, an investigator testified he was unable to locate such possible witnesses. We held in *Commonwealth v. Hollerbush,* 298 Pa.Superior Ct. 397, 444 A.2d 1235 (1982) that where counsel is informed of a possible witness and fails to investigate without explanation and then fails to call such witness ineffectiveness of counsel can be found. Here counsel was not ineffective as to the case worker and any possible alibi witnesses.

The value of the testimony of the victim's son and the bartender would be limited to the purpose of showing that the victim was familiar with appellant prior to the crimes and therefore was aware of his unusual scars. And further, appellant contends that the victim knew of his place of employment prior to the rape and assault. Appellant argues that the victim was much more familiar with him than she would let the jury believe.

**10.** He also claims counsel was ineffective regarding jury selection. Having previously addressed such claim and finding no merit to the challenges to the jury we need not review counsel's stewardship.

The prosecutrix admitted that she had seen appellant "around" prior to the rape. She indicated that he had even knocked on her door asking to use her bathroom and her phone. She also stated that a man by the name of "Lou" had called her, uninvited and unwanted, on a number of occasions. The caller's voice matched that of appellant when he came to her door. Trial counsel cross-examined the victim regarding her familiarity with appellant. The defense also called appellant and the victim's former paramour to testify regarding the relationship between appellant and the prosecutrix. The former paramour testified concerning an incident that occurred where the victim had talked to a man, who met appellant's general description, outside her apartment door, and also to comments made by the victim's son involving a person with the same first name as appellant. The witness also related comments made by the victim to the effect that a person with appellant's first name was going to get her a job at appellant's place of employment. Appellant argues that had trial counsel also called the above-mentioned bartender and the victim's son, they would have testified that they saw the victim and appellant together.

While at first glance there may appear to be merit to appellant's claim of ineffectiveness, upon further reflection it becomes evident that no relief is in order. "[T]he failure to call a possible witness will not be equated with a finding of ineffectiveness absent a positive demonstration that the testimony would have been helpful to the defense. *Commonwealth v. Stokes*, 294 Pa.Super. 529, 440 A.2d 591 (1982)." *Commonwealth v. Rivera*, 309 Pa.Superior Ct. 33, 38, 454 A.2d 1067, 1070 (1982). Here appellant contends that the overlooked witnesses could have shown that the prosecutrix was only able to identify him because she knew him beforehand. However, none of the witnesses could testify that the victim knew of appellant's scars or work history, hence their testimony is not pertinent to the purpose for which it was to be offered. Additionally, such testimony would have been cumulative to the other defense

witnesses' testimony and counsel will not be held to be ineffective in not calling every conceivable witness to testify to the same facts. *Commonwealth v. Rivera; supra; Commonwealth v. Lochman,* 265 Pa.Superior Ct. 429, 402 A.2d 513 (1979).[11]

## Sentencing

Appellant first argues that he was denied his right to allocution at the time of sentencing. Furthermore, he believes the court erred when it failed, at the time it imposed sentence, to state the total minimum. Both allegations were raised in a motion to modify sentence.

Rule 1405(a), Pa.R.Crim.P. reads:

At the time of sentencing, the judge shall:

(a) afford the defendant the opportunity to make a statement in his own behalf and afford counsel for both parties an opportunity to present argument and information relative to sentencing.

In the case at hand the court did not invite appellant to make a statement on his own behalf. However, in an effort to clarify the pre-sentence report, appellant testified regarding the prior treatment programs he had completed.

Recently, in *Commonwealth v. Barton,* 312 Pa.Superior Ct. 176, 183, 458 A.2d 571, 575 (1983), this court held:

A bare denial of the right to allocution, without evidence that appellant had something to say, will not re-

---

**11.** As to the failure to investigate the cab driver, we likewise can not find counsel was ineffective. Counsel will not be deemed ineffective for not investigating and calling all conceivable witnesses irregardless of the nature of their information. *Commonwealth v. Barren,* 273 Pa.Superior Ct. 492, 417 A.2d 1156 (1980). Appellant contends that the cabby would have testified that he had taken someone, other than appellant, either to or from the victim's apartment complex on the night in question. Such testimony would have been merely collateral as to whether appellant was at the scene of the crime and how he may have gotten there. Counsel is not ineffective in not pursuing a collateral matter. *Commonwealth v. Tabas,* 308 Pa.Superior Ct. 43, 454 A.2d 12 (1982) (Opinion by Van der Voort, J. remanding on other grounds; Wickersham filed Dissenting Statement in which he found no reason to remand; Hoffman, J. filed a Concurring and Dissenting Opinion in which he would remand for reasons in addition to that of Judge Van der Voort.)

quire the vacation of an otherwise proper sentence. That which he wished to say, moreover, must be such as would likely have influenced the sentence imposed. To require a vacating of the sentence and a subsequent resentencing, appellant will have to show that the sentencing judge was either misinformed or uninformed regarding one or more relevant circumstances. The sentence need not be vacated in order to provide appellant an opportunity to speak if he has nothing significant to say. *Commonwealth v. Rivera*, [309] Pa.Super. [33], [39], 454 A.2d 1067, 1070 (1982).

The right to allocution is neither constitutional nor jurisdictional. The failure to ask a defendant if he has anything to say before sentence is imposed is not a fundamental defect inconsistent with rudimentary requirements of due process or an error inherently resulting in a miscarriage of justice. *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417, 421 (1962). Thus, as the Supreme Court held in *Hill*, collateral relief is not available when a petitioner shows merely a formal failure to comply with a rule requiring the court to invite a defendant to speak before sentence is imposed.

The right of allocution in Pennsylvania is also based upon procedural rule. See: Pa.R.Crim.P. 1405(a). A mere failure to comply formally with the mandate of Rule 1405(a), which requires the court to invite a defendant to speak, does not destroy the validity of an otherwise legal sentence and render it susceptible to collateral attack. *Hill v. United State, supra.*

As appellant does not demonstrate what other information he would have brought to the court's attention to supplement counsel's comments, we see no need to remand for allocution. *Compare Commonwealth v. Smillie*, 316 Pa. Superior Ct. 83, 92, 462 A.2d 804, 809 (1983).[12]

■ Appellant's second issue as to the sentencing is also without merit. While it is true that 18 Pa.C.S.A. § 1357, requires the sentencing court, when it imposes consecutive

12. Since reenacted at 42 Pa.C.S.A. § 9757.

sentences, to inform the defendant of the total minimum, failure to do so does not require resentencing.

In *Blackwell v. Commonwealth*, 36 Pa.Cmwlth. 31, 387 A.2d 506 (1978), the defendant had been sentenced to one term of one to two years, and two terms of six months to one year; the three sentences were to be served consecutively. The sentencing court did not establish an aggregate minimum sentence. The Commonwealth Court reasoned:

> Thus, when petitioner was sentenced, the judge should have "indicated" an effective minimum sentence and thereby establish a date upon which petitioner would be eligible for parole. This he failed to so specifically. We are of the view, however, that by necessary implication, the sentences were aggregated and there was imposed upon petitioner a sentence the minimum of which was two years and the maximum of which was four years.

*Id.*, 36 Pa.Cmwlth. at 37–38, 387 A.2d at 509. Accepting the holding of *Blackwell*, we find that appellant's consecutive sentences of ten (10) to twenty (20) years, ten (10) to twenty (20) years, and five (5) to ten (10) years by "necessary implication" provided for an aggregate sentence of twenty-five (25) to fifty (50) years. No reason exists to remand for resentencing.

Judgment of sentence is affirmed.