**Commonwealth v. McLean**

C.P. of Chester County, no. 1478-93.

*Stephen Kelly,* for Commonwealth.
*David Miller,* for defendant.

WOOD, *J.,* April 12, 1995—On December 3, 1993, a jury found the defendant, Christian McLean, guilty of recklessly endangering another person and aggravated assault. The evidence presented at trial showed that the defendant attended a party with his girlfriend and drank vodka, along with different medications he needed because he was in a wheelchair. He became very tired and his friends told him to retire to the bedroom before he passed out. He took their advice and slept for an hour. When he awoke and returned to the party, he noticed Robert McKenna sitting and talking with his girlfriend. The defendant started to harass Mr. McKenna about "moving in on his girlfriend." They exchanged insults and a fight ensued. The defendant stabbed Mr. McKenna more than once. The police then arrested the defendant shortly after the incident.

The defendant has limited his grounds for a new trial to two issues. He argues that the Commonwealth improperly refreshed the recollection of witness Jeanna Contrera through a leading question on direct examination. He also argues that I improperly ordered his attorney to disclose materials protected by the work product privilege.

I.

During the direct examination of Ms. Contrera, the assistant district attorney was having difficulty eliciting defendant's exact words to Ms. Contrera during a tele-

phone conversation. Ms. Contrera related the substance of the conversation, without the exact quotation the ADA had hoped to elicit. The ADA then asked Contrera if she remembered what she had said to him (the ADA) previously. She admitted that she did not remember exactly what she told him. The ADA then refreshed her recollection without the jury present. The relevant excerpt from the notes of testimony follows:

"Q. Would it refresh your recollection if I told you that the defendant told you that he said he was going to get away with this because he's handicapped and there are no facilities—

"A. Okay that's right. That's the key word, get away with it." (N.T. 11/30/93, p. 105.)

The jury was then brought back in and Ms. Contrera testified that the defendant told her "I'll get away with it because I'm handicapped and they don't have any facilities in this state to house me." (N.T. 11/30/93, p. 109.)

The defendant asserts that the Commonwealth failed to lay a proper foundation for refreshing recollection because the Commonwealth did not establish that she could not remember what the defendant had said on the phone.

I disagree. It is clear from the testimony that Ms. Contrera did not remember the defendant's exact words. It was within my discretion to permit the use of a leading question to refresh recollection. See *Commonwealth v. Bell,* 328 Pa. Super. 35, 476 A.2d 439 (1984). I conclude that I properly exercised this discretion because, once the Commonwealth established that the witness could not remember the defendant's precise words, use of a leading

question, outside the hearing of the jury, did help to jog the witness's memory.

## II.

The defendant also argues that I should not have ordered defense counsel to disclose a report to the Commonwealth because the report fell under the work product privilege.

At trial, the Commonwealth called Thomas Tarraborelli, a witness present at the scene, to testify. On cross-examination, defense counsel asked:

"Q. Now, before the scuffle, do you recall hearing a statement from Robert McKenna, where he asked Chris McLean something about wanting to fight and take it outside? ...

"A. No.

"Q. You don't recall hearing that?

"A. No.

"Q. Do you remember talking to a person by the name of Helene Gannon who's an investigator in this matter; do you remember talking to that person?

"A. A woman came by my house.

"Q. Do you remember what her name was?

"A. No, sir.

"Q. If I told you it was Helene Gannon, would that refresh your recollection?

"A. No, it wouldn't. I can barely remember what I did yesterday.

"Q. You talked to this person on November 23; would that be correct? If I were to tell you that; (sic) would you agree with that?

"A. I talked to somebody from this area?

"Q. If I told you that you explained to her that Mr. McKenna said before the fight, that he wanted to go out and fight and taking it outside, taking this outside, meaning the argument, would that refresh your recollection as to what Robert McKenna said?

"A. No, sir, it wouldn't." (N.T. 12/1/93, pp. 142-43.)

After the close of the Commonwealth's case, defense counsel called Helene Gannon to the stand. She testified that she spoke to Thomas Tarraborelli and he explained that immediately before the fight, Mr. McKenna said to the defendant "... something to the effect, did [you] want to fight and take it outside." (N.T. 12/2/93, p. 434.) The ADA objected to the testimony, arguing that defense counsel had improperly impeached Mr. Tarraborelli by failing to show the statement to counsel and the witness before he used it for impeachment. Defense counsel responded that Mr. Tarraborelli had already testified that he did not make the statement. The ADA then asked for a copy of Ms. Gannon's report.

At sidebar, defense counsel explained that he was impeaching the witness with an oral statement rather than the report summarizing the interview. Defense counsel also argued that the report was not discoverable material because Ms. Gannon was testifying from her own rec-

ollection, rather than from the report of her conversation with Mr. Tarraborelli. I ordered counsel to photocopy the report for the ADA with the condition that the ADA's cross-examination would be limited to the question of whether or not the witness made the statement. On cross-examination, the ADA asked:

"Q. Ms. Gannon, right after Mr. Tarraborelli told you that, you pressed him for details; is that right?

"A. That's correct.

"Q. And he said he couldn't remember exactly who said what, didn't he?

"A. He said he couldn't remember exact, exact details, that was a long time ago. I don't remember exactly who said what, yes. That's in my report. ...

"Q. Let me invite your attention to the sentence that you attribute to Mr. Tarraborelli and the following sentence says, that he didn't recall exactly who said what; isn't that correct?

"A. The report specifically states when pressed for details about who said what exactly, and that is referring to take it outside, Tabs said, I can't remember exactly who said what. There was a lot going on. It was like Chris wanted to fight.

"Q. It was like Chris wanted to fight?

"A. And you can only push one so far. That's continued on the next page. I believe that's what it is.

"Q. This is your handwriting?

"A. That's correct, sir.

"Q. Chris wanted to fight?

"A. Correct." (N.T. 12/2/93, pp. 441-43.)

I believe it was proper to order the defendant to provide the Commonwealth with the investigator's report because it was a contemporaneous record of the event about which the investigator testified, *i.e.,* the witness's statement. Without seeing the entire written statement of the witness, the Commonwealth would have had little or no ability to challenge Ms. Gannon's recollection of the conversation.

Even if it was error to permit the ADA to review the report, the error involved credibility on a tangential point which would have had minimal influence on the verdict. See *Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155 (1978). Mr. Tarraborelli had already testified that he could not recall whether Mr. McKenna made any other remarks. (N.T. 12/1/93, p. 124.) He also testified that he could not remember exact words. (N.T. 12/1/93, p. 124.) Therefore I must enter the following:

ORDER

And now, April 12, 1995, the defendant's motion for a new trial is denied. After the pre-sentence investigation has been completed, the court administrator shall schedule this matter for sentencing on the first available date.