J-S16024-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| BRIAN LEE PIERSON, | |
| Appellant | No. 1332 MDA 2014 |

Appeal from the Judgment of Sentence of December 15, 2010
In the Court of Common Pleas of Centre County
Criminal Division at No(s): CP-14-CR-0000633-2010, CP-14-CR-0000634-2010 AND CP-14-CR-0000635-2010

BEFORE:  PANELLA, OLSON AND OTT, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED MAY 06, 2015**

Appellant, Brian Lee Pierson, appeals from the judgment of sentence entered on December 15, 2010, following his jury trial convictions for three counts each of possession of heroin, possession with intent to deliver (PWID) heroin, and delivery of heroin, and one count of criminal conspiracy.[1]  Upon review, we affirm.

We briefly summarize the facts and procedural history of this case as follows.  In mid to late 2009, Pennsylvania State Trooper Jeffrey A. Johnson investigated and conducted surveillance of suspected heroin drug dealing in Clearfield and Centre Counties.  Using a confidential informant, Trooper

---

[1] 35 P.S. §§ 780-113(a)(16), 780-113(a)(30), 780-113(a)(30), and 18 Pa.C.S.A. § 903(a)(1), respectively.

Johnson initiated three separate controlled narcotics sales. On February 23, 2010, Trooper Johnson filed three individual criminal complaints against Appellant alleging he made heroin sales on July 9, 2009, August 28, 2009, and September 9, 2009. Following a jury trial on September 16, 2010, the jury convicted Appellant of the aforementioned crimes. On December 15, 2010, the trial court sentenced Appellant to an aggregate term of six to 20 years of imprisonment, with credit for time-served. Appellant filed a post-sentence motion on December 21, 2010. The trial court entered an order on May 23, 2011, denying the post-sentence motion by operation of law.

On April 9, 2012, Appellant filed a *pro se* petition pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. The trial court appointed counsel who filed two amended PCRA petitions. The trial court held an evidentiary hearing on July 8, 2014 and reinstated Appellant's direct appeal rights *nunc pro tunc*. This timely appeal resulted.[2]

On appeal, Appellant presents the following issues for our review:

> I. Did the trial court err in refusing to give [Appellant's] requested point for charge, No. 12 (paragraph 2)?
>
> II. Did the trial court abuse its discretion in admitting the hearsay evidence of Trooper Jeffrey Johnson as

---

[2] Appellant filed a notice of appeal on August 5, 2014. On August 19, 2014, the trial court ordered him to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied timely on September 4, 2014. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on October 13, 2014.

contained on page 105 of the trial transcript over the objection of counsel for [Appellant]?

III.    Did the trial court abuse its discretion in allowing the read back to the jury only of testimony on direct of a Commonwealth witness (Ryan Bordas), and not the witness' testimony on cross-examination?

IV.    Were the verdicts against the weight of the evidence?

V.    Did the trial court err in concluding there was sufficient evidence to support the jury verdicts?

Appellant's Brief at 8 (complete capitalization omitted).

In his first issue presented, Appellant claims that the trial court erred by refusing to instruct the jury with his requested point for charge regarding a witness' prior convictions for crimes of *crimen falsi*. ***Id.*** at 16-18. More specifically, Appellant contends that he cross-examined Commonwealth witness, Ryan Bordas, who was a confidential informant in this matter, and elicited testimony that Mr. Bordas had been convicted of burglary and receiving stolen property. ***Id.*** at 17. Appellant claims "[t]he instruction by the [t]rial [c]ourt only indicated that the prior criminal convictions, including the *crimen falsi* convictions, could only be used to determine the overall motive of Ryan Bordas in testifying." ***Id.*** (italics added). Appellant contends that he specifically requested Pennsylvania Standard Suggested Criminal Jury Instruction 4.08D, "which deals with impeachment of a witness by *crimen falsi* convictions[]" and that the trial court abused its discretion in failing to give that requested instruction. ***Id.*** (italics added).

Our standard of review in assessing a trial court's jury instructions is as follows:

> When evaluating the propriety of jury instructions, this Court will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper. We further note that, it is an unquestionable maxim of law in this Commonwealth that a trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error.

*Commonwealth v. Trippett*, 932 A.2d 188, 200 (Pa. Super. 2007) (internal citation and brackets omitted).

Here, the trial court instructed the jury as follows:

> You should examine closely and carefully and receive with caution the testimony of Ryan Bordas if you find that he has a bias or has a penal interest in testifying for the Commonwealth. You may consider evidence of all of Ryan Bordas' prior convictions in considering the extent of his prior criminal record and its effect on his motivation to cooperate with the Commonwealth and to testify favorably for the Commonwealth in light of the criminal charges that he himself is facing.

N.T., 9/16/2010, at 233-234.

Further, the trial court instructed:

> […] You must consider and weigh the testimony of each witness and give it such weight as in your judgment it is fairly entitled to receive. The matter of the credibility of a witness – that is, whether his or her testimony is believable in whole or in part – is solely for your determination. I will mention some of the factors which might bear on that determination: whether the witness has any interest in the outcome of the case or has friendship or animosity towards

- 4 -

other persons involved in the case; the behavior of the witness on the witness stand and his or her demeanor; his or her manner of testifying and whether he or she shows any bias or prejudice which might color his or her testimony; the accuracy of his or her memory or recollection; his or her ability and opportunity to acquire knowledge of or to observe the matters concerning which he or she testifies; the consistency or inconsistency of his or her testimony, as well as its reasonableness or unreasonableness in light of all of the other evidence in this case.

If you believe some part of the testimony of a witness to be inaccurate, consider whether the inaccuracy casts doubt upon the rest of the witness' testimony. This may depend on whether the witness has been inaccurate in an important matter or a minor detail and on any possible explanation. For example, did the witness make an honest mistake or simply forget, or did the witness deliberately falsify.

*Id.* at 236-237.

In evaluating the totality of the jury instructions given, we discern that the trial court adequately apprised the jury of the applicable law. Here, the jury heard testimony that Mr. Bordas had been convicted of robbery and receiving stolen property, among other crimes. N.T., 9/16/2010, at 66-70. While the jury instructions given by the trial court do not specifically reference crimes of falsehood, or *crimen falsi*, the trial court did accurately state that the jury should consider Mr. Bordas' prior convictions and his motivation to testify. The trial court also told the jury that credibility determinations were solely within their province. Hence, in sum, the jury was instructed that it should consider Mr. Bordas' criminal history in making its credibility determinations. "The law presumes that the jury will follow the instructions of the court." **Commonwealth v. Chmiel**, 30 A.3d 1111, 1184

(Pa. 2011). Thus, we presume that the jury weighed the witness' prior crimes in determining whether to impeach his testimony. Accordingly, we discern no abuse of discretion simply because the trial court failed to incorporate the requested verbiage. Accordingly, Appellant's first issue is without merit.

Even if, as Appellant argues, the trial court failed to specifically instruct the jury that it could consider Mr. Bordas' prior *crimen falsi* convictions in considering whether he testified truthfully in this case, we fail to see how this omission had any meaningful impact upon the guilty verdict given the quantity of inculpatory evidence introduced against Appellant. Our Supreme Court has determined:

> The harmless error doctrine, as announced in **Chapman v. California**, 386 U.S. 18, (1967), and adopted by [the Pennsylvania Supreme] Court in **Commonwealth v. Story**, 383 A.2d 155 (Pa. 1978), reflects the reality that the accused is entitled to a fair trial, not a perfect trial. **Commonwealth v. Rasheed**, 640 A.2d 896, 898 (Pa. 1994); **Commonwealth v. Norris**, 446 A.2d 246, 250 (Pa. 1982). An error may be harmless where the properly admitted evidence of guilt is so overwhelming and the prejudicial effect of the error is so insignificant by comparison that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict. **Story**, 383 A.2d at 166. In instances of alleged trial court error […], the judgment of sentence will be affirmed in spite of the error only where the reviewing court concludes beyond a reasonable doubt that the error did not contribute to the verdict.

**Commonwealth v. Noel**, 104 A.3d 1156, 1172 (Pa. 2014) (quotations and original brackets omitted).

Here, Appellant makes no argument that the jury instruction would have impacted the jury's verdict. Regardless, even if the jury did not consider the confidential informant's testimony, the eyewitness testimony of the investigating officer was sufficient to support Appellant's convictions. Here, at trial, Trooper Johnson detailed the process for utilizing the confidential informant:

> The confidential informant is strip-searched before and after the deal to make sure he has nothing on him besides what [police] give him. If he's driving his own vehicle, [police] search the vehicle to make sure it is free of any contraband, meaning drugs or money or anything else that would be connected to the investigation, and [police] make a predetermined location or meeting place where the informant is going to meet with the target. And at the conclusion of the strip search, [the confidential informant] is given funds to purchase the substance. Surveillance is conducted throughout the operation. The buy is hopefully made. [The confidential informant and police] meet back at a location. [Police] strip-search [the confidential informant] again, [search] his vehicle and take the drugs [from the controlled buy] and do an interview and write a report.

N.T., 9/16/2010, at 110. In each of the three narcotics transactions, Trooper Johnson followed this protocol. *Id.* at 111, 119, and 122. After each transaction with Appellant, the confidential informant returned with three bags of heroin. *Id.* at 112, 120, and 125-126. During the first and third transactions, Trooper Johnson personally witnessed hand-to-hand transactions between Appellant and the confidential informant. *Id.* at 111 and 125. The second transaction took place at Appellant's residence wherein Trooper Johnson watched the confidential informant enter the home

and maintained surveillance until the informant exited. *Id.* at 120. There was no evidence presented that someone else was present at Appellant's home at the time of the second transaction. Thus, with Trooper Johnson's eyewitness testimony, it is clear beyond a reasonable doubt that the trial court's failure to specifically instruct the jury that it could consider Mr. Bordas' prior *crimen falsi* convictions in determining whether he testified truthfully in this case could not have contributed to the verdict. Appellant's first claim fails for this additional reason.

In his second issue presented, Appellant claims the trial court abused its discretion by admitting hearsay evidence at trial. Appellant's Brief at 19. In particular, Appellant asserts that Trooper Jeffrey Johnson testified that he had information "learned through a separate investigation of a large scale heroin, cocaine and marijuana dealer from New York" that Appellant was "allegedly involved in that drug trafficking ring." *Id.* Appellant contends that the information was either offered for the truth of the matter asserted or did not qualify for a state of mind exception to hearsay because "[t]he statement made by the declarant as testified by Trooper Johnson has nothing to do with state of mind, but was merely intel as it related to a drug trafficking ring." *Id.* at 20. Appellant argues that admission of the statement was not harmless because "[t]he improperly admitted hearsay statement was not on some unrelated matter[,] but went to the very heart of the charges against [Appellant]." *Id.* at 21.

Appellant's second issue challenges the trial court's evidentiary rulings:

> On a challenge to a trial court's evidentiary ruling, our standard of review is one of deference.
>
> The admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

*Commonwealth v. Hernandez*, 39 A.3d 406, 411 (Pa. Super. 2012) (citation omitted).

"Hearsay is an out-of-court statement offered into evidence to prove the truth of the matter asserted." Pa.R.E. 801(c). "As a general rule, hearsay is inadmissible as such evidence lacks guarantees of trustworthiness fundamental to the Anglo–American system of jurisprudence." *Commonwealth v. Estepp*, 17 A.3d 939, 945 (Pa. Super. 2011), *citing Commonwealth v. Dargan*, 897 A.2d 496, 500 (Pa. Super. 2006). "However, 'an out-of court statement offered not for its truth but to explain the witness's course of conduct is not hearsay' and thus, is not excludable under the hearsay rule." *Id.*, *citing Commonwealth v. Rega*, 933 A.2d 997, 1017 (Pa. 2007).

In *Estepp*, we stated:

> This Court addressed a factual similar situation in *Dargan* where the trial court allowed an investigating officer to testify to the out-of-court statements of a confidential

informant for the limited purpose of explaining the officer's course of conduct. The officer testified that his confidential informant gave him a tip that an African–American male named "Oc" was selling heroin out of his home in Old Forge. The informant gave police a description of "Oc" and his vehicle, the location where Oc lived, and his license plate number. This Court refused to find error as the trial court admitted the statements with specific instructions for the jury to consider the evidence for a particular purpose.

*Estepp*, 17 A.3d at 502, *citing* *Dargan*, 897 A.2d at 498-502.

Here, upon review, we conclude, as in *Estepp*, that the Commonwealth offered Trooper Johnson's testimony to explain his course of conduct in the investigation of this matter. As the Commonwealth explained at trial, this testimony was not adduced "for the truth of the matter asserted[,]" but rather, "for the effect it had on the listener, his state of mind and what he was going to do with information." N.T., 9/16/2010, at 105. Trooper Johnson testified that his investigation in this matter resulted from his investigation in another case. *Id.* at 106. Course of conduct testimony is not hearsay if the statement is offered to show the progression of a police investigation. *Estepp*, 17 A.3d at 945.

Moreover, immediately after the aforementioned testimony, the trial court issued the following cautionary instruction to the jury:

The evidence that you just heard about [Appellant] is not anything that has been proven, anything that has been alleged or anything here today, and you should not accept it as that kind of evidence, only as information that this trooper received and what his state of mind was when he received it.

- 10 -

N.T., 9/16/2010, at 106. The jury is presumed to follow the court's instructions. **See Chmiel**, 30 A.3d at 1184. Hence, we discern no abuse of discretion in allowing Trooper Johnson's course of conduct testimony at trial.

In his third issue stated, Appellant argues the trial court abused its discretion by allowing the court reporter to read back to the jury the answers to direct examination questions given by Commonwealth witness and confidential informant, Mr. Bordas. Appellant's Brief at 21-24. He claims "[t]his placed an undue emphasis on Mr. Bordas' direct testimony and created no context of any issues raised through cross-examination." **Id.** at 23.

This Court previously determined:

> When a jury requests that recorded testimony be read to it to refresh its memory, it rests within the trial court's discretion to grant or deny such request. The court must be careful so as not to place undue emphasis upon those portions which are requested. The parameters concerning the extent that testimony should be read to the jury are to be set by the jurors' request. Hence the court, if it deems it appropriate, may permit the jury to hear only a portion of a witness' testimony.

**Commonwealth v. Bell**, 476 A.2d 439, 449 (Pa. Super. 1984) (internal citations omitted).

Here, after approximately two hours of deliberation, the jury made a written request for a "copy of Ryan's testimony because parts were inaudible." N.T., 9/16/2010, at 252. The trial court sent a note back to the jury stating:

- 11 -

> We are unable to provide you with a copy of Ryan's testimony because it has not yet been transcribed. If you wish to hear any portion of the testimony, the court reporter will read it back to you. Your request should be as specific as to the exact portion of the testimony you wish to hear again.

*Id.* Twenty minutes later, the jury sent out a second note that read: "Request Ryan's testimony during the time when he described to the D.A. events of July 9th, August 28th and September 9th. We don't want his personal history or his cross-exam." *Id.* at 253. The trial court called the jury into the courtroom and told the jurors that it would honor the request. *Id.* at 255. However, the trial court also stated:

> Now, I would caution all of you that you should not give this part of the testimony any more or less weight than the rest of it. I want you to also consider the testimony prior to this, as well as the cross-examination, as well as all of the testimony that has been received here today.

*Id.* at 256.

Based on the foregoing, we discern no abuse of the discretion in permitting the jury to hear the requested portions of testimony. The request was specific and the trial court appropriately set parameters tailored to that request. The trial court also gave a cautionary instruction not to place undue emphasis upon those portions of testimony that the jury requested. Again, the jury is presumed to follow the court's instructions. *See Chmiel*, 30 A.3d at 1184. Accordingly, Appellant's third issue lacks merit.

Appellant asserts that he is withdrawing his fourth and fifth issues. Appellant's Brief at 24-25. Thus, we need not address them.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/6/2015